Oliver P. C. Billings, Appellant, *v.* The Mayor, Alder-
men and Commonalty of the City of New York,
Respondent.

Under a title expressive of the reorganization of a city government the
legislature may create and define the functions and compensation of
city officers, impose upon those accepting such offices any disability
or restriction as to holding other offices, and provide that the compen-
sation allowed them as city officers shall cover all services which they
may be called upon as such to render to other divisions of the State.

The provision of the act of 1873 "to reorganize the local government of
the city of New York" (§ 114, chap. 335, Laws of 1873), providing that
no officer of the city government shall hold or retain a county office,
except when he holds it *ex officio*, and in such case he shall draw no
salary for such *ex officio* office, legitimately appertains to the subject
expressed in the title and, therefore, is not violative of section 16, article
of the State Constitution.

Under said provision, and the further provision of said act (§ 116), provid-
ing that the annual salaries paid by the city to city officers shall be in
full for all services rendered by them in any capacity to the city or
county, an alderman of the city who, by virtue of the act of 1873 (chap.
763, Laws of 1873), relating to the supervisors of the county of New
York, is, *ex officio*, a supervisor, is not entitled to any salary for his
services as supervisor.

Under and by virtue of the provision of the consolidation act of 1874
(chap. 304, Laws of 1874) devolving the powers and duties of the board
of supervisors upon the board of aldermen, so far as the Constitution
would then admit; and under the amendment to the Constitution of
1875 (art. 3, § 32) removing all restraints upon such a transfer, the act
operated to abolish the functions of the office of supervisor, and the
office ceased.

(Argued January 24, 1877; decided February 13, 1877.)

Appeal from judgment of the General Term of the Court
of Common Pleas of the city and county of New York, revers-
ing a judgment in favor of plaintiff entered upon an order
overruling demurrer to the complaint and directing judgment.

The nature of the action and the facts are set forth suffi-
ciently in the opinion.

*Geo. F. Comstock* and *Michael Cardozo* for the appellant.
Sections 114 and 116 of chapter 335, Laws of 1873, entitled

"An act to reorganize the local government of the city of New York," abolishing the salaries of supervisors of said city and county is unconstitutional, the act being a local act. (*People ex rel. Monheimer* v. *Green*, N. Y. S. C., 1873; *People ex rel. City of Rochester* v. *Briggs*, 50 N. Y., 558; 8 id., 252; *People* v. *Huber*, 49 id., 132; *Halstead* v. *Mayor, etc.*, 3 id., 436; *Gordon* v. *Cowes*, 47 id., 608; *Fishkill* v. *Plankroad Co.*, 22 Barb., 642.)

*D. J. Dean* for the respondent. The office of supervisor of the county of New York ceased January 1, 1875. (Const., art. 3, § 22.) The supervisors of the city and county of New York are not entitled to salary. (Laws 1873, chap. 763, p. 1161, §§ 114, 116.) The legislature has from the earliest period legislated concerning city and county officers in the same act. (1 R. S., 368; Laws 1859, chap. 302; Laws 1871, chap. 583.)

Rapallo, J. This action was brought to recover a salary claimed by the plaintiff as one of the supervisors of the county of New York, for the months of January, February, March and April, 1875.

The alleged grounds of this claim are, that the plaintiff was during these months one of the aldermen of the city of New York. That he was, by virtue of his office as alderman of the city, a supervisor of the county, and entitled as such supervisor to a salary at the rate of $2,000 per annum.

A general demurrer was interposed to the complaint, and the General Term of the Court of Common Pleas of the city of New York rendered judgment for the defendant on such demurrer. From that judgment the plaintiff appeals to this court.

The statutes upon which the plaintiff relies in support of his claim, are chapter 583 of the Laws of 1871 (Laws of 1871, Vol. 2, p. 1274), which enacts that "each member of the board of supervisors of the county of New York, excepting the mayor, shall hereafter receive an annual salary of $2,000,"

and chapter 763 of the Laws of 1873 (Laws of 1873, p. 1161), which enacts that "the mayor and the recorder of the city of New York, together with the aldermen thereof, shall compose the board of supervisors of the county of New York, and each of said officers shall be a supervisor of said county."

On the part of the defendants it is contended that the provisions of the charter of 1873 (Laws of 1873, chap. 335), preclude the plaintiff from demanding the salary in question. Section 114 of this charter (page 519) provides, among other things, that no officer under the city government shall hold or retain an office under the county government, except when he holds such office *ex officio* by virtue of an act of the legislature, and that in such case he shall draw no salary for such *ex officio* office.

If this enactment is valid it cannot be questioned that it deprives the plaintiff of all right to demand any salary as supervisor, he holding the latter office (supposing it still to have been in existence in 1875) only by virtue of his office as alderman. But the validity of the enactment is disputed on the ground that the title of the act in which it is contained is "An act to reorganize the local government of the city of New York." It is contended that the provision in question does not relate to the government of the city but to officers of the county, and that the latter subject is not expressed in the title.

The provision, in terms, is a prohibition upon city officers. At the time it was enacted, it must be observed, it did not affect supervisors of the county, for at that time aldermen were not *ex officio* supervisors. They were made such by the act subseqently passed in the same year. The charter was passed April 30, 1873, and the act making aldermen *ex officio* supervisors was not passed until June fourteenth of that year. It would hardly have been appropriate, therefore, to have inserted in the title of the charter any thing to indicate that it affected supervisors of the county, for it did not at that time affect or relate to them. It affected only city officers, and provided as to them that if, by act of the legislature,

any county office should be conferred upon them *ex officio*, they should not draw any salary for such office in addition to the compensation given them by the charter as city officers. This, we think, was a provision which legitimately appertained to the subject of the city government. It was a restriction upon its own officers. It in no manner related to or regulated their functions as county officers should any such office be conferred upon them.

It does not seem to us unreasonable to hold that the legislature might, under the title of reorganizing the government of the city, not only create city offices and define their functions and compensation, but impose upon parties occupying such offices any disabilities or restrictions as to holding other offices which sound policy might be deemed to require, and might provide that the compensation allowed them as city officers should cover all services which they might be called upon to render to any other division of the State in consequence of being such city officers. And this is precisely what was done, for in addition to the provision above cited, section 116 of the same charter provides that the annual salaries paid to such officers by the city, shall be in full for all services rendered by them to the city or county, in any capacity whatever.

This being the law existing at the time of the passage of the act making aldermen supervisors *ex officio*, that act must be deemed to have contemplated that they should receive no additional salary for serving as such supervisors; and the two acts taken together must be held to have superseded all prior acts which allowed supervisors a salary, at the time when the offices of supervisors and aldermen were distinct and independent.

A further, and scarcely less conclusive answer to the plaintiff's claim, is afforded by the act of 1874, in connection with the amendment to the Constitution which took effect on the 1st of January, 1875.

By the act of 1874, known as the consolidation act (Laws of 1874, chap. 304, § 3), it is provided that "all the powers and duties that now are or hereafter may be charged upon the board of supervisors of the said city and county, shall be

exercised and performed by the board of aldermen of said city, as such, subject to the like power of approval or rejection by the mayor of said city, as is or may be required by law in respect to acts of the common council of said city, except that when by the Constitution or laws of this State any action is specifically required to be taken by the board of supervisors of said city and county, which cannot under any power conferred by this act or otherwise be taken in any other manner, such action may be taken by the board of aldermen as the board of supervisors of the said city and county."

The object of this act, as is well known and is apparent from its whole context, was to abolish, as far as the Constitution permitted, a separate county organization and the functions of the board of supervisors, and to vest all the functions of that body in the board of aldermen as such. But, inasmuch as by the Constitution some duties were expressly required to be performed by boards of supervisors as such (Const. of 1846, art. 3, § 5), the exception was made, so as to enable the board of aldermen to act as a board of supervisors in the cases where action as supervisors was required by the Constitution, and consequently could not be devolved by the legislature upon the board of aldermen. The act, therefore, devolved upon the board of aldermen, as such, all the powers and duties formerly appertaining to the supervisors, excepting only such as the legislature could not authorize to be performed by any other body than the board of supervisors. So far and so long only as required by the Constitution, were any powers or functions left in any body acting as a board of supervisors.

By the amendment of the Constitution which took effect January 1, 1875 (§ 22, art. 3), all restraint of this description was removed. The county of New York was no longer required to have a board of supervisors, and in that city and county all the powers and duties of a board of supervisors were rendered capable of being devolved upon the board of aldermen. After this amendment took effect, therefore, there remained no case to which the exception contained in the act of 1874, was applicable. There was no case in which action

could not "under any power conferred by that act or otherwise be taken in any other manner," than by a board of supervisors. When there remained no case in which action in any other manner could not be authorized, that act operated to totally abolish all the functions of supervisors as such, and there was no case in which the board of aldermen were required to or could act as a board of supervisors. The functions of the office having been abolished, the office itself ceased to exist, and consequently no one could be entitled to claim the salary, even if one had been attached to it.

The judgment appealed from should be affirmed.

All concur.

Judgment affirmed.