THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN J. McGINNISS, Appellant, *v.* GEORGE W. PALMER, as Comptroller of the City of Brooklyn, Respondent.

*Brooklyn — when the term of employment of an employee of the board of supervisors, rendering services after the consolidation of the city and county, ceased — implied contract.*

Upon an appeal by John J. McGinniss, the relator, from an order denying his motion for a writ of peremptory mandamus compelling the comptroller of the city of Brooklyn to pay him for his services as custodian of records of the late board of supervisors of Kings county, it appeared that by chapter 954 of the Laws of 1895 the county of Kings and the city of Brooklyn were consolidated and were made to constitute a new corporation known by the name of "The City of Brooklyn," and all county property was declared to be vested in the city after January 1, 1896, and all the duties of the board of supervisors were thereafter devolved upon the common council of the city.

By a prior act (Chap. 686 of the Laws of 1892) the board of supervisors was constituted the custodian of the books and records of the county, and on the 1st day of June, 1895, it employed the relator as an assistant to the clerk of the board of supervisors in the care and safe-keeping of the county records at a fixed monthly salary, the board of supervisors having already by a resolution of May 20, 1895, provided that the clerk of the board of supervisors should be the custodian of the records "until such time as the county records * * * are by law directed to be transferred" to the city.

On the 27th day of December, 1895, the board passed another resolution entitled "To provide for the custody and safe-keeping of records and documents and

the care of county property until transferred to the city authorities," which
designated a fund from which were to be paid the " cost and expenses incidental
to the care, custody, transfer and handling of records from the county to the
city."

The relator alleged in his affidavit, read on the motion, that he had performed
his duties in reference to the care of the public records for the month of
January, 1896, and this statement was not denied.

*Held*, that the mandamus should have been issued;

That the Consolidation Act should be given such a construction as would pre-
vent the public records from being without an actual custodian;

That the employees of the board of supervisors, having the actual custody of the
books and records, retained their employment and right to compensation for
such services, until they were relieved by the officer of the city who was, by the
charter or by the Consolidation Act, made their custodian;

That if the officials of the city of Brooklyn failed to remove the records from the
custody of the employees of the county, or make arrangements for their care,
they impliedly continued the county employees in the service of the city.

After a consideration of the two resolutions of the board of supervisors the court
was of opinion that the term of employment of the relator was intended to be
limited by the date of the actual transfer of the records, and not by the 1st day
of January, 1896, the day when the consolidation between the city and the
county was directed by law to take effect.

CULLEN and BARTLETT, JJ., dissented as to the term of employment.


APPEAL by the relator, John J. McGinniss, from an order of the
Supreme Court, made at the Kings County Special Term and entered
in the office of the clerk of the county of Kings on the 2d day of
March, 1896, denying his motion for a writ of peremptory man-
damus to compel the comptroller of the city of Brooklyn to pay
him for his services as custodian of records of the late board of super-
visors of Kings county.

The resolutions referred to in the opinion upon which the relator
based his claim were as follows:

The resolution of the board of supervisors of Kings county, of
May 20, 1895, was:

" A resolution to provide for the custody and safe-keeping of
the records and documents of the board of supervisors until trans-
ferred to the city authorities, pursuant to section 26 of chapter 686
of the Laws of 1892.

" WHEREAS, The bill providing for the consolidation of the city
of Brooklyn and county of Kings has been passed by the Legislature
upon the certificate of the Governor that public interests demanded

the same, it is essential that the papers and records possessed by this board should be so arranged that they may be in shape to be readily transferred to the city and apportioned to the proper municipal departments.   *   *   *

" *Resolved,* That until such time as the county records and documents in control of this body are by law directed to be transferred, the clerk to this board, in addition to his other duties, is hereby constituted custodian of said records and documents, and in him is hereby vested the power and authority to control and to arrange the same in order that the interests of the city and county and the rights and responsibilities of this board may not be neglected; and Marriot T. Dowden, George E. England and John J. McGinniss are hereby designated to act as assistants to said clerk in all such matters, as well as to perform their other respective duties, so long as they may be required, and each of the aforesaid assistants so appointed shall each receive a salary of $250 monthly, in lieu of the salaries now paid to them, and the county treasurer is hereby authorized and directed to pay the same on the first day of each month, said payments to commence respectively on June 1, next, the difference between that and the compensation heretofore paid to them to be taken from the premium account and transferred to the account of salaries, as is hereby authorized and directed by the board."

The resolution of the board of supervisors of Kings county, of December 27, 1896, was:

" A resolution to provide for the custody and safe-keeping of records and documents and the care of county property until transferred to the city authorities, pursuant to section 26 and section 12 of chapter 686 of the Laws of 1892.

" *Resolved,* That the cost and expenses incidental to the care, custody, transfer and handling of records from the county to the city, as provided by this board on May 20, 1895 (see printed minutes, page 621), and all other resolutions supplemental thereto or amendatory thereof shall be paid out only upon the certificate of the clerk to this board, appointed to superintend said work, and shall be taken from the fund provided in the act adopted by this board on March 25, 1895 (see printed minutes, pages 393 and 947), and any section of said act inconsistent herewith is hereby repealed.   The

clerk of the board is also directed to have transferred, the desks, books and records, etc., of the commissioner of jurors and district attorney from one office to the other in accordance with resolution passed May 20, 1895. (See printed minutes, page 621.)"

*John J. McGinniss*, appellant, in person.

*Joseph A. Burr, Corporation Counsel*, for the respondent.

BROWN, P. J.:

The relator, by this proceeding, seeks to recover his salary for the month of January, 1896, for services rendered in relation to the care and custody of the papers and records of the late board of supervisors of Kings county.

The motion was denied at the Special Term upon the ground that by the express provision of the resolution of said board his term of employment expired on January 1, 1896.

There were no papers read on the motion, except the affidavit of the relator and the resolutions of the board annexed thereto, and there is, consequently, no dispute upon the facts of the case.

I do not deem it important to this motion to consider the question discussed by the learned corporation counsel, whether the effect of the Consolidation Act (Chap. 954 of 1895) was to create a new corporation under the title of the city of Brooklyn, or whether the county government was simply merged into, and consolidated with, the city.

The resolution of the board of supervisors under which the relator acted, and which fixed his compensation, did not create an office. The relator was simply an employee of the county. The board of supervisors was, by law, the custodian of county property and the books and records of the county, and was especially charged with the care of the latter, and directed to "provide for their safe-keeping." (Chap. 686, Laws of 1892, § 26.)

The consolidation law is drawn in the most general terms. It makes no specific provision for the care and safe-keeping of county records. All county property is declared to be vested in the city after January 1, 1896, and all duties of the board of supervisors after that date are devolved upon the common council of the city. From and after that date the board of supervisors and all county

government ceased, and the local government for the whole county was vested in the city of Brooklyn, and all charges, compacts and obligations of the county, or which, but for the Consolidation Act, would have been enforcible against the county, were imposed upon, and made enforcible against, the city. It would be too narrow a construction of the power of the board of supervisors to hold that its contracts with its employees having the care and custody of county property, necessarily terminated absolutely on the 1st day of January, 1896. While the title to property passed from the county to the city on that date and new public officers became charged with its care, the actual physical transfer from one officer to another would be a much slower proceeding. The law does not contemplate that the public officer who is charged with the duty of caring for public books and records has the manual custody of them. He acts through clerks and other subordinates, and the court will take judicial notice of that fact. The Consolidation Act should not have such a construction as would prevent the public records and books from having an actual custodian. The public interests would not permit us to so construe it, unless the language used actually compelled it. I am of the opinion, therefore, that the employees of the board of supervisors having the actual custody of its books and records, retained their employment and right to compensation for such services until they were relieved by the officer of the city who was, by the charter or Consolidation Act, made the custodian thereof. Such a construction is reasonable and proper, as it is in the interest of the preservation of public property, and it was within the power of the city official to discharge the employees of the board at any time, and take the actual custody of its records. Such officials must be presumed to know the law and their duties with respect to the records, and if they failed to remove them from the custody of the employees of the county or make arrangements for their care, they must be presumed to have acquiesced in the arrangement existing, and impliedly continued the county employees in the city's service.

The relator is, therefore, entitled to be paid for his services, unless his employment was for a fixed term. If it was then his claim is equitable and not legal, and the order appealed from must be affirmed.

The facts in relation to the relator's employment are not in dispute, and, in my judgment, they are such as to entitle him to be paid his salary.   It appears that up to and including the month of May, 1895, the relator was the clerk to the supervisor at large. From the first day of June he was employed as an assistant to the clerk of the board of supervisors in the care and safe-keeping of the county records, for which services his salary was fixed at $250 a month.   It does not appear from the papers before us that he had or performed any other duties.   It is true that the body of the resolution of May twentieth provides that the clerk shall be the custodian of the records "until such time as the county records and documents in control of this body are by law directed to be transferred" to the city.   But that expression is not controlling as to the term of the relator's employment.   It is plain, I think, from the title of this resolution, and from the resolution of December twenty-seventh, that the term of employment was intended to be limited by the time of the actual transfer, and not by the day of the month on which consolidation between the city and county would take effect.

The title of the resolution of May twentieth is:  "To provide for the custody and safe-keeping of the records and documents," etc., "until transferred to the city authorities pursuant to section 26 of chapter 686 of the Laws of 1892."

The title of the resolution of December twenty-seventh is:  "To provide for the custody and safe-keeping of records and documents and the care of county property until transferred to the city authorities," etc.

These expressions clearly contemplate an actual physical transfer as distinguished from the legal transfer of the title of the property. The resolution of December makes this more apparent by its reference to the "cost and expenses incidental to the care, custody, transfer and handling of records from the county to the city," etc., and by designating the fund from which such expenses were thereafter to be paid.

The allegation of the relator's affidavit, that for the month of January, 1896, he performed the duties imposed upon him in reference to the care of the public records, is not denied, and for the services so rendered he was entitled to be paid his salary.

The order appealed from should be reversed and the motion for a mandamus granted.

All concurred, except CULLEN and BARTLETT, JJ., dissenting.

CULLEN, J. (dissenting) :

It is not necessary to determine or examine as to what should be the theory on which the county of Kings and the city of Brooklyn were consolidated by chapter 954, Laws of 1895. Whether the county and the city by that statute are to constitute a new corporation known by the name of " The City of Brooklyn," or whether the county is merged into the then present corporation of the city of Brooklyn, does not in our opinion affect the rights of the relator. Conceding to the fullest degree the claim of the corporation counsel, that the old city corporation still survives, it is plain that the county organization was not in all respects abrogated or destroyed but simply merged into the city. In many respects the city organization had not, nor has it now, unless we consider various departments of the county organization as still existing, despite the consolidation, machinery to deal with various county functions which must still be continued. The county, as a separate corporation, is abolished ; and the county offices which are dependent on or necessary for the continuance of the separate corporate existence merely, doubtless determine with the end of that separate existence ; but the employment of the employees of the county in the various positions or departments which were not abolished by the consolidation was not abrogated by that event. Their employment after consolidation could be terminated by the various departments of the city government under which their duties fell, but till so terminated their employment continued. So we think the employees engaged about the court house or other county buildings continued in their places until discharged.

But we think this rule is not applicable to the relator for two reasons : (1) While the board of supervisors might have employed him without definite term it did not do so, but employed him until a specified time as specified in the resolution, that is, " until such time as the county records and documents in control of this body are by law directed to be transferred." The employment is not until the transfer should be actually made, but until such time as the records

are " by law directed to be transferred." This can refer but to one period, that is the 1st day of January, 1896, upon which day the city and county were to be consolidated; (2) the compensation directed to be paid by the resolution of the board was not solely for services as custodian of public records, but also for services as clerk to the board. By the resolution the clerk was constituted custodian of the records, and the relator with others only designated to assist him, " as well as to perform their other respective duties so long as they may be required," and the relator with the other assistants were granted a salary of $250 monthly in lieu of the salaries then paid them. I do not know that we should now decide whether the clerks of the board of supervisors could survive the death of the board. However that may be, the salary the relator now seeks to obtain is claimed solely for his services as assistant to the custodian of records. There is nothing in the papers to show that he continued to discharge the other clerical duties which he was performing at the time of the resolution. The resolution did not give him $250 a month for services only as assistant, and he is, therefore, not entitled to recover that compensation for such services. If he has performed these services it is entirely within the power of the city authorities to properly compensate him for them.

The order appealed from should be affirmed, without costs.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.