THE PEOPLE OF THE STATE OF NEW YORK ex rel. RUDOLPH C. FULLER, Respondent, v. BIRD S. COLER, as Comptroller of the City of New York, Appellant.

*Inspector of the construction of county buildings of Kings county — his continuance in office after the consolidation of Kings county and the city of Brooklyn, and the passage of the Greater New York charter — he was an employee of the county — quære, whether he was a public officer.*

An inspector of the construction, etc., of county buildings, appointed in September, 1895, by the board of supervisors of Kings county (which county was on January 1, 1896, by chapter 954 of the Laws of 1895, consolidated with the city of Brooklyn), whose term of office was fixed at four years from the date of his appointment by chapter 1001 of the Laws of 1896, which provided for the appointment of a successor by the mayor of the city of Brooklyn for a like term, was simply an employee of the county and not a public officer. Assuming, however, that, by the act of 1896, he was made a public officer, he was as such, after the Consolidation Act of 1895, in the employment, not of the county of Kings, but of the city of Brooklyn; and his term of office, not being preserved by the Greater New York charter (Laws of 1897, chap. 378), was abolished, especially as, by title 8 of chapter 10 of that act, all powers and duties relating to the construction, repair and maintenance of public buildings conferred upon either city, or upon any officer or board thereof, were vested in the department of public buildings thereby constituted.

*Quære,* whether such officer fell within the terms of section 1536 of the Greater New York charter, which provides for the continuance in the public employment of clerical and other subordinate officers not subject to removal without cause.

APPEAL by Bird S. Coler, as comptroller of the city of New York, from an order of the Supreme Court, made at the Kings County

Special Term and entered in the office of the clerk of the county of Kings on the 17th day of June, 1898, directing that a peremptory writ of mandamus issue to Bird S. Coler, comptroller of the city of New York, commanding him to draw a warrant on the chamberlain of the city of New York to the order of the relator, Rudolph C. Fuller, for the salary of said Fuller as inspector of construction, alteration and repairs of county buildings in Kings county for the months of January, February, March and April, 1898, and further directing Robert A. Van Wyck, mayor of the city of New York, to countersign said warrant.

*William J. Carr [Almet F. Jenks* with him on the brief], for the appellant.

*William C. Wallace [John McG. Goodale* with him on the brief], for the respondent.

CULLEN, J.:

This application is for a peremptory writ of mandamus to the comptroller and mayor of the city of New York, directing them to sign a warrant for the payment of petitioner's salary as inspector of construction, alteration and repairs of county buildings in the county of Kings for the months of January, February, March and April, 1896. None of the facts alleged in the moving affidavits were put in issue by the respondent, who, however, alleged that the board of estimate and apportionment of the city had not made any appropriation of money for the purpose of paying the relator's salary, and that the relator had not at any time presented a claim for audit, as required by the city charter. The Special Term granted the writ as prayed for.

It is not necessary to examine the technical objections raised by the affidavit of the respondent, as in our opinion the relator is not entitled to receive any salary from the city. The foundation of the argument in support of the relator's claim and the position adopted by the learned judge at Special Term is that the relator holds a county office. This view, we think, erroneous. In September, 1895, the board of supervisors of Kings county, by resolution, appointed the relator "inspector of the construction, alteration and repairs of county buildings under existing contracts, and such as

hereafter may be made by this board," and directed that he should receive a salary, to be paid monthly, at the rate of $2,000 a year, the same to be taken from the public building fund. At the time of the enactment of this resolution there was no statutory authority for the creation of such an office as inspector of buildings. Doubtless the board of supervisors had the power to appoint the relator to perform the services prescribed in the resolution and to fix his compensation. Still, by his appointment, the relator did not become a public officer; he was simply an employee of the county. By chapter 954 of the Laws of 1895 the county of Kings, on January 1, 1896, was consolidated with the city of Brooklyn, and all the rights, franchises, property and interests of the county and of the board of supervisors were from that date vested in the city. As was held in the case of *People ex rel. McGinniss* v. *Palmer* (6 App. Div. 19; affd., 150 N. Y. 570, on dissenting opinion in this court), the employment of the relator was not abrogated by the consolidation, but continued until terminated by the department of the city government under which his duty fell. The relator continued in the discharge of his duties after the consolidation, and in 1896 there was enacted the following statute: "Section 1. The term of office of the inspector of construction, alteration and repairs of county buildings in Kings county, heretofore appointed by the board of supervisors of said county, is hereby fixed at four years from the date of said appointment, unless sooner terminated for cause, after notice and hearing. His successor shall be appointed upon the expiration of his term of service by the mayor of the city of Brooklyn for a term of four years. Said inspector shall be paid a salary of not less than two thousand dollars per annum. The board of estimate shall each year provide for the payment of said inspector as herein provided. Until said board of estimate shall provide for the payment of the salary of said inspector, said inspector shall be paid from the moneys heretofore appropriated by the board of supervisors of Kings county for building purposes.

"§ 2. It shall be the duty of said inspector to inspect all repairs, alterations and improvements of public buildings heretofore under the care and custody of the board of supervisors of Kings county, and report thereon to the mayor of the city of Brooklyn." (Laws of 1896, chap. 1001.)

We assume (the assumption most favorable to relator) that by this statute the employment of the relator was raised to a public office, and he constituted the incumbent thereof. The office so created was not a county office, but a city office. By the Consolidation Act of 1895 the county of Kings, as a municipal corporation, was abrogated, though as a political division of the State and for local purposes, so far as its constitutional officers, such as sheriff, district attorney and the like were concerned, it continued in being. The duties and services of the relator were in no manner connected with those constitutional functions of the county government which were beyond the domain of legislative interference, but related solely to the corporate property interests of the county. Before the statute of 1896, as to the relator's position and tenure of office, all the property of the county had been vested in the city of Brooklyn, and all the contracts and obligations of the county and of the board of supervisors constituted obligations of the city. Therefore, at this time, the subject-matter of the relator's functions was solely the property and interest of the city of Brooklyn. The relator was in the public employment, not of the county of Kings, but of the city of Brooklyn; and this only because, as we held in the *McGinniss* case, the city took the county as a "going concern," and the employees of the latter were continued in service until discharged. The act of 1896 does not assume to constitute the office of the relator a county office. It specifies his duties, prescribes his term of office, and refers to his appointment as having thitherto been made by the supervisors of the county — a statement which was unquestionably correct. The act prescribes his duty to inspect repairs and improvements of public buildings, not then, but "heretofore," under the custody of the board of supervisors, and report thereon to the mayor of the city. We are clear, therefore, that the relator was a city officer and not a county officer. By the consolidation of the cities of Brooklyn and New York the terms of the officers of Brooklyn, except as they were saved by the new charter, were abolished. (*People* v. *Morris*, 13 Wend. 325; *People* v. *Morrell*, 21 id. 563.) Not only is the relator's office not continued in existence by the new charter (Laws of 1897, chap. 378), but by title 8 of chapter 10 of that statute all powers and duties relating to the construction, repairs and maintenance of public buildings, conferred

upon either city or upon any officer or board thereof, were vested in the department of public buildings constituted by the charter.

We express no opinion as to whether the relator's case falls within the terms of section 1536 of the charter, which provides for the continuance in the public employ of clerical and other subordinate officers not subject to removal without cause. But if the relator was entitled to protection within this provision it was necessary that the board of officers constituted by this section should assign him to service in one of the departments. There is no allegation in the moving papers of such an assignment.

The order appealed from should be reversed and the motion denied, with ten dollars costs and disbursements.

All concurred.

Order reversed, with ten dollars costs and disbursements, and application denied.

---

NOTE.— The rest of the cases of this term will be found in the next volume, 34 App. Div. — [REP.