In re FULLER.

(Supreme Court, Appellate Division, Second Department. October 25, 1898.)

1. OFFICERS—STATUTORY AUTHORITY.
    One appointed by the board of supervisors of a county to an office does not become a public officer, but merely an employé of the county, where there is no statutory authority for the creation of such an office.

2. MUNICIPAL CORPORATIONS—COUNTY OR CITY OFFICER.
    The act of May 29, 1896, § 1, fixed the term of office of the inspector of buildings of Kings county (an officer appointed by the board of super-

visors, before the county was consolidated with the city of Brooklyn, without statutory authority, and who was therefore merely an employé of the county), and provided (section 2) that he should inspect repairs and improvements of public buildings theretofore under the custody of the board of supervisors of Kings county, and report to the mayor of the city of Brooklyn. *Held* that, assuming that by such act the employment of such inspector was raised to a public office, the office so created was not a county, but a city, office.

3. SAME—CHARTER OF NEW YORK—CLERICAL EMPLOYES.

New York City Charter, § 1536, provides for the continuance in the public employ, in any part of the new city of New York, of clerical and other subordinate officers not subject to removal without cause, and for the assignment to service of such employés by a board of officers. *Held*, that one invoking such provision on an application for mandamus to compel the city to pay his salary must allege an assignment in one of the departments.

Appeal from special term, Kings county.

Application of Rudolph C. Fuller for a writ of peremptory mandamus to the comptroller and mayor of the city of New York, and from an order granting the writ (53 N. Y. Supp. 200) they appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

William J. Carr (Almet F. Jenks, on brief), for appellant.

William C. Wallace (John McG. Goodale, on brief), for respondent.

CULLEN, J. This application is for a peremptory writ of mandamus to the comptroller and mayor of the city of New York, directing them to sign a warrant for the payment of petitioner's salary as inspector of construction, alteration, and repairs of county buildings in the county of Kings, for the months of January, February, March, and April, 1898. None of the facts alleged in the moving affidavits were put in issue by the respondent, who, however, alleged that the board of estimate and apportionment of the city had not made any appropriation of money for the purpose of paying the relator's salary, and that the relator had not at any time presented a claim for audit, as required by the city charter. The special term granted the writ as prayed for.

It is not necessary to examine the technical objections raised by the affidavit of the respondent, as, in our opinion, the relator is not entitled to receive any salary from the city. The foundation of the argument in support of the relator's claim, and the position adopted by the learned judge at special term, is that the relator holds a county office. This view we think erroneous. In September, 1895, the board of supervisors of Kings county, by resolution, appointed the relator "inspector of the construction, alteration, and repairs of county buildings under existing contracts, and such as hereafter may be made by this board," and directed that he should receive a salary to be paid monthly at the rate of $2,000 a year, the same to be taken from the public building fund. At the time of the enactment of this resolution, there was no statutory authority for the creation of such an office as inspector of buildings. Doubtless, the board of supervisors had the power to appoint the relator to perform the services prescribed in the resolution, and to fix his compensation. Still, by his appoint-

ment the relator did not become a public officer; he was simply an employé of the county.    By chapter 954 of the Laws of 1895, the county of Kings, on January 1, 1896, was consolidated with the city of Brooklyn; and all the rights, franchises, property, and interests of the county and of the board of supervisors were from that date vested in the city.    As was held in the case of People ex rel. McGinniss v. Palmer, 6 App. Div. 19, 39 N. Y. Supp. 631, affirmed in 150 N. Y. 570, 44 N. E. 1127, on dissenting opinion in this court, the employment of the relator was not abrogated by the consolidation, but continued until terminated by the department of the city government under which his duty fell.    The relator continued in the discharge of his duties after the consolidation; and in 1896 there was enacted the following statute:

"Section 1. The term of office of the inspector of construction, alteration and repairs of county buildings in Kings county, heretofore appointed by the board of supervisors of said county, is hereby fixed at four years from the date of said appointment, unless sooner terminated for cause after notice and hearing.   His successor shall be appointed upon the expiration of his term of service by the mayor of the city of Brooklyn for a term of four years. Said inspector shall be paid a salary of not less than two thousand dollars per annum.   The board of estimate shall each year provide for the payment of said inspector as herein provided.   Until said board of estimate shall provide for the payment of the salary of said inspector, said inspector shall be paid from the moneys heretofore appropriated by the board of supervisors of Kings county for building purposes.

"Sec. 2. It shall be the duty of said inspector to inspect all repairs, alterations and improvements of public buildings heretofore under the care and custody of the board of supervisors of Kings county and report thereon to the mayor of the city of Brooklyn."

We assume (the assumption most favorable to relator) that by this statute the employment of the relator was raised to a public office, and he constituted the incumbent thereof.    The office so created was not a county office, but a city office.    By the consolidation act of 1895, the county of Kings as a municipal corporation was abrogated, though as a political division of the state, and for local purposes, so far as its constitutional officers—such as sheriff, district attorney, and the like—were concerned, it continued in being.    The duties and services of the relator were in no manner connected with those constitutional functions of the county government which were beyond the domain of legislative interference, but related solely to the corporate property interests of the county.    Before the statute of 1896, as to the relator's position and tenure of office, all the property of the county had been vested in the city of Brooklyn, and all the contracts and obligations of the county and of the board of supervisors constituted obligations of the city.    Therefore at this time the subject-matter of the relator's functions was solely the property and interest of the city of Brooklyn.    The relator was in the public employment, not of the county of Kings, but of the city of Brooklyn; and this only because, as we held in the McGinniss Case, the city took the county as a "going concern," and the employés of the latter were continued in service until discharged. The act of 1896 does not assume to constitute the office of the relator a county office.    It specifies his duties, prescribes his term of office, and refers to his appointment as having hitherto been made by the supervisors of the county,—a statement which was unquestionably

correct. The act prescribes his duty to inspect repairs and improvements of public buildings, not then, but "heretofore," under the custody of the board of supervisors, and report thereon to the mayor of the city. We are clear, therefore, that the relator was a city officer, and not a county officer. By the consolidation of the cities of Brooklyn and New York, the terms of the officers of Brooklyn, except as they were saved by the new charter, were abolished. People v. Morris, 13 Wend. 325; People v. Morrell, 21 Wend. 563. Not only is the relator's office not continued in existence by the new charter, but by title 8 of that statute all powers and duties relating to the construction, repairs, and maintenance of public buildings, conferred upon either city or upon any officer or board thereof, were vested in the department of public buildings constituted by the charter.

We express no opinion as to whether the relator's case falls within the terms of section 1536 of the charter, which provides for the continuance in the public employ of clerical and other subordinate officers not subject to removal without cause. But, if the relator was entitled to protection within this provision, it was necessary that the board of officers constituted by this section should assign him to service in one of the departments. There is no allegation in the moving papers of such an assignment.

The order appealed from should be reversed, and the motion denied, with $10 costs and disbursements. All concur.