(165 App. Div. 298)

PEOPLE ex rel. DEITZ v. HOGAN et al.

(Supreme Court, Appellate Division, Second Department. December 17, 1914.)

1. OFFICERS (§ 57*)—ELECTION—CONSTITUTIONAL PROVISION.

Const. art. 10, § 5, declaring that the Legislature shall provide for filling vacancies in office, and in case of an elective office no person appointed shall hold longer than the commencement of the political year next succeeding the first annual election after the vacancy, applies only to offices created or made elective by the Constitution.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 86; Dec. Dig. § 57.*]

2. MUNICIPAL CORPORATIONS (§ 129*)—ALDERMEN—NATURE OF OFFICE.

Const. art. 12, § 3, declaring that all elections of city officers, except to fill vacancies, shall be held in odd-numbered years, does not require elections in even-numbered years to fill a vacancy in the office of alderman.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 303, 306; Dec. Dig. § 129.*]

3. MUNICIPAL CORPORATIONS (§ 123*)—ALDERMEN—NATURE OF OFFICE.

Const. art. 1, § 17, providing that it shall not annul charters of bodies politic, does not make the office of alderman of the city of New York a constitutional office, because that city had the right to elect aldermen long before the adoption of the Constitution, which only protected the right.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 341; Dec. Dig. § 123.*]

4. MUNICIPAL CORPORATIONS (§ 129*)—ALDERMEN—NATURE OF OFFICE.

Greater New York Charter (Laws 1901, c. 466) § 1586, declares that all powers of boards of supervisors which exist in any of the counties within the city of New York, not devolved upon administrative departments, etc., are vested in the board of aldermen. Const. art. 3, § 26, declares that there shall be a board of supervisors in each county, except a county wholly included in a city, in which case the powers and duties of the board of supervisors may be devolved upon the municipal assembly. Article 3, § 5, provides for the division of a county wholly embraced in a city into assembly districts by the common council. Held that, as no powers of the board of supervisors of counties embraced in the city of New York were exercised by the common council, the Constitution itself devolving upon the council the duty of dividing the city into assembly districts, the office of alderman is not a constitutional office, and hence vacancies may be filled by appointment, in accordance with Greater New York Charter, § 18,

instead of by election, in accordance with Const. art. 10, § 5, in case of constitutional offices.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 303, 306; Dec. Dig. § 129.*]

Appeal from Special Term, Kings County.

Application by the People, on the relation of Karl S. Deitz, for writ of mandamus against Michael J. Hogan and others, comprising the Board of Canvassers of Kings County, and William W. Colne. From an order granting a motion for a peremptory writ, the last-named defendant appeals, as does the relator from the refusal to extend the order. Order reversed, and mandamus denied.

Argued before JENKS, P. J., and BURR, THOMAS, STAPLE-TON, and PUTNAM, JJ.

Robert L. Luce, of New York City (Edgar M. Cullen and James D. Bell, both of Brooklyn, on the brief), for relator.

Harry E. Lewis, of Brooklyn, for respondent Colne.

Charles J. Druhan, of Brooklyn (Thomas F. Magner, of Brooklyn, on the brief), for respondent board of county canvassers.

BURR, J. At the general election held on November 4, 1913, Daniel R. Coleman was elected an alderman of the Fifty-Second aldermanic district of the city of New York for a term of two years, to commence on January 1, 1914, and to expire on December 31, 1915. He subsequently qualified and entered upon the discharge of his official duties. On June 25, 1914, he died. On June 30, 1914, the board of aldermen of the city of New York elected William W. Colne as alderman of said district for 'the unexpired portion of Coleman's term. The Fifty-Second aldermanic district of the city of New York is coterminous with the Eleventh assembly district of Kings county, and comprises 30 election districts. At the general election held on November 3, 1914, in 11 out of said 30 election districts certain votes were cast for Karl S. Deitz, the relator, to fill the vacancy arising from Coleman's death. Although it does not clearly appear from the moving papers, is seems to have been assumed upon the argument, and we think that we may assume, that the electors desiring to vote for such candidate wrote upon the ballot the name of relator, with the designation that he was voted for to fill such unexpired term. It does appear that all of the votes cast in said aldermanic district on said election day for the office in question were cast for the relator. The inspectors of election treated these as void ballots, and so returned them, inclosing them in a proper envelope as required by section 369 of the Election Law (Consolidated Laws, c. 17 [Laws 1909, c. 22]).

Thereupon relator applied for a peremptory writ of mandamus directed to the board of canvassers of Kings county and to the inspectors of election in said several election districts, requiring a count and canvass, or recount or recanvass, of the vote for said office, and that they should determine upon such count whether relator was duly elected to said office. From an order granting said motion, and requiring the board of county canvassers to examine and count such ballots and de-

clare the result thereof, defendants the board of county canvassers and the clerk of said board appeal. Relator appeals from an order refusing to direct that a similar writ issue to the said several inspectors of election.

Three questions were discussed upon the argument of this appeal: First. Was there a vacancy in the office of alderman for said aldermanic district, which might be filled at the general election held on November 3, 1914? Second. If so, were the ballots cast for relator proper ballots, so that they should have been canvassed and counted? Third. Is the relator in a position where he may invoke the issuance of a peremptory writ of mandamus as applied for herein?

[1] By section 18 of the Greater New York Charter (Laws 1901, c. 466) it is provided that:

"Any vacancy which may occur among the members elected to the board of aldermen shall be filled by election by a majority of all the members elected thereto, of a person who must be of the same political party as the member whose place has become vacant; and the person so elected to fill any such vacancy shall serve for the unexpired portion of the term."

If this is a valid statute, there was no vacancy to be filled at the general election in the year 1914, and the votes cast for relator were necessarily void. The Constitution of the state of New York, among other things, provides that:

"The Legislature shall provide for filling vacancies in office, and in case of elective officers, no person appointed to fill a vacancy shall hold his office by virtue of such appointment longer than the commencement of the political year next succeeding the first annual election after the happening of the vacancy." Constitution, art. 10, § 5.

The political year succeeding the election of Colne commences on the 1st day of January next. Constitution, art. 10, § 6. At the time of the adoption of the Constitution the office of alderman in the city of New York was an elective office, and it is at the present time. If the language of the Constitution were literally construed, it would seem to indicate that the election of Colne as successor to Coleman, the deceased alderman, would expire on the 1st day of January next, and in such event such vacancy might be filled at the preceding general election. But this provision has been construed to apply only to such offices as are created or made elective by the Constitution itself, and not to such as are created or controlled by statute. People ex rel. Hatfield v. Comstock, 78 N. Y. 356; People ex rel. Ward v. Scheu, 167 N. Y. 292, 60 N. E. 650.

[2, 3] We are required, therefore, to take another step and determine whether the office of alderman of the city of New York is a constitutional or statutory office. In express words the Constitution nowhere creates such office, nor defines its powers and duties. Contention is made, however, that it does this by necessary implication. The Constitution does provide that:

"All elections of city officers, including supervisors and judicial officers of inferior local courts, elected in any city or part of a city, and of county officers elected in the counties of New York and Kings, and in all counties whose boundaries are the same as those of a city, *except to fill vacancies*, shall be held on the Tuesday succeeding the first Monday in November in an odd-

numbered year, and the term of every such officer shall expire at the end of an odd-numbered year." Constitution, art. 12, § 3.

Although an election to fill vacancies is specified as an exception to the general rule, the provisions of this section are permissive and not mandatory. People ex rel. Ward v. Scheu, supra. By this section there is reserved to the Legislature the right to direct that such vacancies in elective offices shall be filled in even-numbered years; but it is not required to do so, and if it chooses it may provide in accordance with the general constitutional scheme of separating local from national and state elections, and, as has been done in this case, for an election only in odd-numbered years unless restrained by some other constitutional provision. To this extent we think that the language employed in People ex rel. Howard v. Supervisors, 42 App. Div. 510, 59 N. Y. Supp. 476, affirmed on opinion below 160 N. Y. 687, 55 N. E. 1099, must be deemed qualified by the language employed in the Scheu Case. The decision in the Howard Case was made to rest solely upon the ground that the office of supervisor in the city of Buffalo was essentially a constitutional office, and language employed in the opinion, general in its character, was not necessary to such decision, and must be deemed obiter dictum. See opinion of Werner, J., in People ex rel. Ward v. Scheu, supra, on page 299 of 167 N. Y. (60 N. E. 650); Scott v. Village of Saratoga Springs, 199 N. Y. 178, 186, 92 N. E. 393.

The learned court at Special Term, tracing historically the origin of the present board of aldermen of the city of New York, concludes that they are the successors of the aldermen and assistant aldermen created and referred to in the Dongan Charter of 1686, and continued by the Montgomerie Charter of 1730. Referring, then, to that clause of the Constitution to the effect that "all grants of land within this state, made by the king of Great Britain, or persons acting under his authority, after the fourteenth day of October, one thousand seven hundred and seventy-five, shall be null and void; but nothing contained in this Constitution shall affect any grants of land within this state, made by the authority of the said king or his predecessors, *or shall annul any charters to bodies politic and corporate, by him or them, made before that day; or shall affect any such grants or charters since made by this state, or by persons acting under its authority*" (Constitution, art. 1, § 17), the learned justice at Special Term draws the conclusion that "the right of the inhabitants of the city of New York to elect their aldermen became, by the adoption of the state Constitution, a constitutional right which the Legislature cannot impair."

With great respect, this appears to us a non sequitur. "This provision is not a restraint upon legislative power, but simply a declaration that the Constitution itself shall not annul such charters." Demarest v. Mayor, 74 N. Y. 161, 168. If the constitutional provision above referred to had the effect claimed for it by the learned court at Special Term, then the statute of 1873 (Laws 1873, c. 335), abolishing the office of assistant alderman in the city of New York, was an invalid exercise of legislative power. In the case above referred to, Judge Earl, writing for a unanimous court, and considering a similar provision in the Constitution of 1846, sustained the validity of that act.

[4] The learned court at Special Term further argues that because the Constitution provides in certain instances for boards of supervisors (Constitution, art. 3, § 26), and because by the provisions of the charter of the city of New York (section 1586) "any and all of the powers and duties of the several boards of supervisors heretofore existing in any of the counties within the territory of the city of New York not transferred or devolved upon administrative departments, boards, commissions, officers or other functionaries, are hereby vested in the board of aldermen of the city of New York," the present board of aldermen is in effect a board of supervisors for the various counties comprised within the territorial limits of the present city. Because supervisors of towns are provided for in the Constitution (Constitution, art. 3, § 26), and such officers are therefore constitutional officers, and fall within the provisions of section 5 of article 10 of the Constitution above referred to, the further conclusion is drawn that the board of aldermen of the city of New York is also composed of constitutional officers.

At the threshold of this contention we are confronted with this difficulty: The present board of aldermen, as a board, represents five different counties. Are the aldermen elected from each of these counties separately to convene and to transact such business as would devolve upon them as a board of supervisors for their respective counties? Or, if the board is to act as a whole, is it not a fact that, whenever legislation which relates to any particular county is considered, it is referred, not to those elected or appointed from that county, but to the entire body, comprising members chosen or appointed from other localities? But, further than that, the section above referred to expressly excludes the city of New York from the provisions contained therein and relating to boards of supervisors. Its language is that:

"There shall be in each county, *except in a county wholly included in a city*, a board of supervisors, to be composed of such members and elected in such manner and for such period as is or may be provided by law." Constitution, art. 3, § 26.

Each of the counties within the city of New York is a county wholly included therein. The section continues:

"In a city which includes an entire county, or two or more entire counties, the powers and duties of a board of supervisors *may be devolved* upon the municipal assembly, common council, board of aldermen or other legislative body of the city."

Again we call attention to the fact, as was noted in the Scheu Case, that this language is permissive, and not mandatory. But it may be urged that by section 1586 of the Greater New York Charter, above cited, this constitutional provision has been availed of, and that for that reason some at least of the powers of former boards of supervisors have been devolved upon the board of aldermen of said city. We cannot at the present time recall any power or duty belonging to the several boards of supervisors formerly existing in any of the counties within the territory of the city of New York which, within the language of the section above referred to, has not been "transferred or devolved upon administrative departments, boards, commissions, officers or oth-

er functionaries" connected with the government of said city; nor has our attention been called to any. The Constitution does provide that:

"In any county entitled to more than one member, the board of supervisors, and in any city embracing an entire county and having no board of supervisors, the common council, or if there be none, the body exercising the powers of a common council, shall assemble * * * at such times as the Legislature making an apportionment shall prescribe, and divide such counties into assembly districts." Constitution, art. 3, § 5.

Clearly there is no room here for giving effect to section 1586, for this duty is by the Constitution itself devolved upon the common council or the body exercising similar powers in the city of New York. The constitutional provision relative to special city laws (Constitution, art. 12, § 2) is not applicable to the city of New York, so as to require the existence of a legislative body therein, for "in every city of the first class [and New York is such a city] the mayor, and in every other city, the mayor and the legislative body thereof concurrently, shall act for such city as to such bill." The subsequent provision of the same section, that the Legislature *may* provide for the concurrence of the legislative body in cities of the first class, must, within the doctrine of the Scheu Case, be construed also as permissive, and not mandatory, and if there is no such legislative body it is not applicable.

We are of the opinion, therefore, that section 1586 of the Greater New York Charter was adopted simply as a precautionary measure, and it may be that it has no present vitality, and relates to no existing power or duty. Billings v. Mayor, 68 N. Y. 413. When the county towns in the county of Kings were consolidated with the former city of Brooklyn, and separate county government by the county of Kings was abolished (Laws 1895, c. 954), there was for a time a severe struggle between the administrative officers of said city and the common council with respect to the powers and duties of the latter, so far as they related to those things which had formerly been under the control of the board of supervisors in said county, and with regard to the status of the former appointees of such board. People ex rel. McGinniss v. Palmer, 6 App. Div. 19, 39 N. Y. Supp. 631, reversed on dissenting opinion of Cullen, J., 150 N. Y. 570, 44 N. E. 1127; People ex rel. Farrell v. Sutton, 9 App. Div. 250, 41 N. Y. Supp. 398; People ex rel. Fuller v. Coler, 33 App. Div. 619, 53 N. Y. Supp. 1090, affirmed 158 N. Y. 667, 52 N. E. 1125. In each instance the contention of the municipal authorities that the board of aldermen had no separate and independent powers with regard, for instance, to the making of contracts for supplies to the county jail, or for various buildings formerly under the control of the board of supervisors, was upheld, and for a long period all of such contracts have been made through administrative municipal officers. Such practical construction of the Constitution and the statute is not without force.

But if there may possibly be some at present unthought-of and unrecognized power which has devolved upon the board of aldermen as successors to the board of supervisors, although up to this time never exercised (and we do not now determine this question), we cannot assume that by such vague reference it was the legislative intention to change an office, which formerly was purely a statutory one, into

an office created by the Constitution, and the filling of which is controlled by its provisions. The consequence of holding that the office of alderman is a constitutional office is so serious in its effect upon existing legislation that we may well hesitate to take this step unless our duty in this regard is clear. Very many of the essential powers originally conferred upon said board, and some of them most important in character, have by statutory enactment been taken from it and devolved upon other municipal bodies in the city of New York. Notably is this the case with respect to the power of granting franchises. This power has been taken from the board of aldermen and conferred upon the board of estimate and apportionment. If the office of alderman is a constitutional office, the validity of this legislation may be questioned. "The authority of the Legislature to regulate the duties of a constitutional office to some extent has frequently been recognized by the courts, but not to the extent of depriving them of a substantial attribute of the office." As was said by Chancellor Walworth in the case of Warner v. People, 2 Denio, 281, 43 Am. Dec. 74:

"When the Legislature * * * assumes the power to take from a constitutional officer the substance of the office itself, and to transfer it to another, who is to be appointed in a different manner and to hold the office by a different tenure than that which was provided by the Constitution, it is not a legitimate exercise of the right to regulate the duties or emoluments of the office, but an infringement upon the constitutional mode of appointment." People ex rel. Wogan v. Rafferty, 208 N. Y. 451, 102 N. E. 582.

We conclude, therefore, that the office of alderman in the city of New York is a statutory and not a constitutional office. The conclusion which we have reached upon this question makes it unnecessary for us to consider either of the other questions argued upon this appeal.

We think that the order appealed from should be reversed, and the motion for a peremptory writ of mandamus denied, and this not in the exercise of discretion, but as a matter of law. All concur.