(165 App. Div. 308)

### In re MURPHY.

(Supreme Court, Appellate Division, Second Department. December 24, 1914.)

ELECTIONS (§ 194*)—BALLOTS—DISTINGUISHING MARK—"MARKED BALLOT."

Where there was in fact a vacancy in a particular office to be filled at a specified election, but the names of no candidates therefor were printed on the ballots, or if there was an honest belief on the part of a voter that such vacancy existed and reasonable ground for such belief, then his act in writing the name of a person on the ballot for such office did not render the ballot void as a "marked ballot," under Election Law (Consol. Laws, c. 17) § 358, providing that any mark other than an X mark, or any erasure of any kind, shall make the whole ballot void.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 166, 167; Dec. Dig. § 194.*

For other definitions, see Words and Phrases, First and Second Series, Distinguishing Ballot.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, Kings County.

In the matter of the application of Charles F. Murphy for a writ of mandamus to the Board of County Canvassers of the County of Kings, etc., for a recanvass of the votes cast for the office of Senator for the Sixth Senatorial District of the state of New York. From parts of an order determining such proceeding, petitioner and respondent William B. Carswell appeal. Modified and affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, STAPLE-TON, and PUTNAM, JJ.

Harry E. Lewis, of Brooklyn, for appellant Murphy.

F. X. Carmody, of New York City (Maurice V. Theall, of New York City, on the brief), for appellant Carswell.

BURR, J. At the election held on November 3, 1914, the canvass of the votes cast for the office of Senator for the Sixth senatorial district of the state of New York indicated that William B. Carswell had received 12,867 votes and that Charles F. Murphy had received 12,845 votes. This gave to Carswell an apparent majority of 22. Thereafter, pursuant to the provisions of section 381 of the Election Law (Consol. Laws, c. 17; Laws 1909, c. 22), the relator applied for a judicial investigation of all ballots cast at said election which were protested or were canvassed as blank or wholly void. As a result of such investigation at the Special Term of this court, Carswell was declared entitled to 3 more votes than he was credited with, and Murphy to 9 more votes than he was credited with. This left Carswell with a majority of 16. An appeal from the order entered upon such decision brings to this court the question of the correctness of the rulings made with reference to the protested or blank or void ballots.

Included in the votes canvassed for Carswell, but which were protested, were 17 ballots, upon which was written, in pencil, the words "For Alderman, 52d District, to fill vacancy, Karl S. Dietz," or "For Alderman, 52d Aldermanic District, to fill vacancy, Karl S. Dietz." Upon some of these ballots these words were written beneath the name of the last candidate whose name appeared upon the official ballot, and upon others it was written in the blank space beneath the group of names for candidates for Attorney General. The Election Law, supra, provides that:

"Any mark other than a cross X mark or any erasure of any kind shall make the whole ballot void." Section 358.

Literally construing these words, it is clear that there was upon each of these ballots other words or marks than a cross X mark. But to construe this act thus literally would, in our opinion, impair its validity. There was no notice given to the voters that there was a vacancy in the office in question to be filled at said election, nor was the name of any candidate for that office printed thereon. But if, in fact, there was such vacancy, omission to give notice would not vitiate an election otherwise valid. People ex rel. Davies v. Cowles, 13 N. Y. 350. And "if the official charged with the duty of preparing the ballot omits to print thereon the name of an office which, under the law, is to be

filled at the election for which the ballot is prepared, the voter may write or paste thereon the name of such office, and of the person for whom he desires to vote as the incumbent thereof." People ex rel. Goring v. President, etc., of Wappingers Falls, 144 N. Y. 616, 39 N. E. 641; Election Law, supra, § 331, subd. 3.

Whether there was a vacancy in the office of alderman of the Fifty-Second district has been a debatable question. This court, at a Special Term thereof, decided that such vacancy did exist. People ex rel. Dietz v. Hogan, decided November 24, 1914; People ex rel. Brady v. Hogan, decided November 24, 1914. This Appellate Division took a different view of the law. People ex rel. Dietz v. Hogan, 151 N. Y. Supp. 261, decided December 17, 1914; People ex rel. Brady v. Hogan, 151 N. Y. Supp. 270, decided December 17, 1914. So long as the latter decisions stand, no elector had a right to cast his vote for any candidate for such office at the last election. But it does not necessarily follow that the 17 ballots upon which the electors had sought to express their choice, in the manner above indicated, are void or defective ballots. Whether successful or otherwise, the primary purpose of the present Election Law is "to insure secrecy and purity of the ballot." People ex rel. Nichols v. Board of Canvassers, 129 N. Y. 395, 29 N. E. 327, 14 L. R. A. 624; Constitution, art. 2, § 5.

Any ballot so marked as to enable one to identify the elector casting the same, when such marking was its primary purpose, should properly be rejected. But the power to regulate elections must be so exercised as not to deny or impair the rights of the electors. Matter of Callahan, 200 N. Y. 59, 93 N. E. 262, 140 Am. St. Rep. 626. In the case of Matter of Hopper v. Britt, 203 N. Y. 144, 96 N. E. 371, 37 L. R. A. (N. S.) 825, Ann. Cas. 1913B, 172, the court employed this significant language:

"One great object of the present ballot was to prevent bribery by rendering it difficult to determine how any elector voted. There is, however, an opportunity for identification left. The elector may, in the blank column, write the name of some particular candidate and thus identify his vote. Undoubtedly the voter may be punished for so doing on proof of the unlawful purpose for which he wrote the name of the particular person. Fortunately the evil does not seem at all common. But, even if it were prevalent, to correct the evil the inviolable right of the elector to vote for whom he chose could not be invaded."

Although this language may not have been essential to the determination of the questions involved in that case, its importance as a true expression of judicial judgment is not wholly lost. If there was a vacancy in fact in the office, then writing the name of the candidate in connection with the office to be filled could not be said to make the same a "marked ballot," so as to vitiate it. If there was an honest belief that such vacancy existed, and reasonable ground for such belief, then it must be equally true that a voter who wrote upon his ballot the name of such office, with the name of the person that he desired to fill the same, has not so marked his ballot as to destroy its validity. The alternative would be that the voter must correctly decide the question as to such vacancy at the peril of nullifying his vote for any other candidate upon the official ballot. We think, therefore, that the 17 Dietz

ballots were valid ballots and were properly counted for the respondent Carswell.

There remains still some ballots to be considered, the validity of which was challenged upon other grounds. As to some of those specified in the notices of appeal of the relator and of the respondent, the appeal has been withdrawn. As to the remainder, we think that the decision of the learned court at Special Term was correct, except in the following particulars:

Ballot numbered and designated Exhibit No. 207 is a valid ballot for the candidate Murphy, was not counted, and should be counted, and so much of the finding of fact numbered 12 as finds that this is not a valid ballot is reversed and set aside, and said vote is added to the vote of said Murphy.

Ballot numbered and designated Exhibit No. 205 is not a valid ballot for the candidate Murphy, was not counted for him, and should not be counted, and so much of the finding of fact numbered 14 as finds that said ballot is a valid ballot, and that said vote should be added to the vote of said Murphy, is reversed and set aside.

Ballot numbered and designated Exhibit No. 245 is not a valid ballot for the candidate Murphy, was not counted for him, and should not be counted for him, and so much of the finding of fact numbered 20 as finds that said ballot is a valid ballot, and that said vote should be added to the vote of said Murphy, is reversed and set aside.

As to ballots numbered and designated Exhibits Nos. 299 and 300, it is conceded that these are not good ballots. The only question raised upon this appeal is whether they had been counted for the candidate Murphy. The court at Special Term found that they had been, and directed that two votes be deducted from his vote. The evidence upon this question is not conclusive. For this reason we decline to interfere with the finding of the Special Term respecting the same. For the same reason we decline to interfere with the finding of the said court respecting ballots numbered and designated Exhibits Nos. 344, 358, 366, and 367.

We think that the order of the Special Term should be modified in the respects above noted, and, as modified, affirmed, without costs, and that the stay of proceedings heretofore granted should be vacated. All concur.