Sego *v.* Stoddard.

Filed Jan. 23, 1894.

———————◆———————

No. 16,989.

## SEGO *v.* STODDARD.

ELECTIONS.—*Ballot.*—*Distinguishing Mark.*—The following are held to be distinguishing marks rendering the ballot invalid: A leadpencil mark across the name of a candidate on the ballot; a ballot stamped in the small square to the left of the name of a candidate, and the stamp mark partially erased, causing a hole in the ticket, though otherwise properly stamped; a ballot stamped in a square containing a device, and also to the left of the name of a candidate in the list under such stamped device; a ballot stamped in a square containing a device, and also in the square to the left of each name in the list under such stamped device; a ballot stamped in a square containing a device, and also to the left of two names in another list of candidates, the list under the stamped device being complete; a ballot stamped in the square to the left of the candidates voted for, in the various lists, and also in a square opposite to which there

136  297
,136  700
136  297
142  377
136  297
146  53
136  297
156  360

is no candidate's name printed, a stamp in a square opposite no candidate's name being a distinguishing mark; a ballot containing more than one stamp mark in a square containing a device.

SAME.—*Manner of Stamping Ballot.—Statute Mandatory.*—The statute relating to the manner of stamping a ballot is mandatory, and not merely directory.

From the Porter Circuit Court.

*E. E. Weir, J. E. Cass, A. L. Jones, J. W. Kern* and *L. O. Bailey*, for appellant.

*E. D. Crumpacker*, for appellee.

McCABE, J.—At the general election held on the 8th day of November, 1892, the appellant, Joseph Sego, was the Democratic candidate; the appellee, Heber Stoddard, the Republican candidate; one Harrison H. Williams, the People's candidate, and one William B. Gibbs, the Prohibition candidate, for the office of sheriff of Porter county.

At the meeting of the board of canvassers, convened in pursuance of law, there were canvassed and counted for each of said candidates, respectively, the following number of votes, viz: For appellant, 2,020; for appellee, 2,023; for Harrison H. Williams, 100, and for William B. Gibbs, 114 votes. Whereupon, appellee having been found by said board to have received the plurality of all the votes returned and canvassed, he was declared elected to said office.

On the 15th day of November, 1892, within ten days after the result of said canvass was declared, appellant filed, in the office of the auditor of said county, his statement to contest the election of appellee to said office.

Issue, trial before the board of commissioners, resulting in a judgment by the board, that appellee had received a plurality of all the votes cast at said election, and had been duly elected to said office. The appellant

appealed to the circuit court of said county, where there was a trial by the court, special finding and conclusions of law, whereon there was another judgment rendered in favor of appellee, declaring that he had received a plurality of all the votes cast at such election, and had been duly elected to said office, from which judgment this appeal is prosecuted.

It is assigned for error that the circuit court erred in its conclusions of law. This is the only question presented by this appeal.

The finding shows that the number of votes in the aggregate, with which each candidate was credited by the canvassing board, were all legal votes, and that each candidate was legally entitled to be so credited in the count. The controversy arises over sixty-five other ballots that had been returned to the clerk's office in sealed bags, none of which had been counted by the board of canvassers for either candidate.

The finding and conclusions of law show that the sixty-five ballots so returned to the clerk's office uncounted had been cast by legal voters at said election, and that twenty-three of them were so stamped as to indicate the intention of the voters to vote for the contestee, Stoddard, and were free from marks or mutilations whereby said ballots could be distinguished, and should have been counted for the contestee, and the circuit court did so count them, making his whole vote 2,046.

No question is made in appellant's brief against the correctness of this ruling, and of the uncounted ballots returned as aforesaid, the court found as matter of fact, and stated in its legal conclusions, that nineteen of them were so stamped as to indicate the intention of the voters to vote for contestor, Joseph Sego, and that said ballots were free from any marks or mutilations by which they

could be distinguished, and should have been counted for said Sego, and the court so counted them for him, making his whole number of votes 2,039.

No question is made on either side as to the correctness of this conclusion.

The court further finds that two of said uncounted ballots were so stamped as to indicate the intention of the voters to vote for the contestor, Sego, and were free from marks or mutilations by which they could be distinguished, and were properly stamped, but that said two ballots were not protested by any member of the election board at said election whereat they were cast, and that the action of the election board in rejecting said ballots was unanimous in their decision that the same ought not to be counted, and said ballots were in no way disputed or protested, and for that reason the court concluded, as matter of law, that they ought not to be counted, and accordingly rejected them for that reason.

Whether that conclusion of law was right or wrong, as we shall hereafter see, can make no difference in the result of this case.

We have left, of the uncounted ballots, twenty-one yet to consider. One of these was found to contain a lead-pencil mark across the name of Thomas Hammond, a candidate for Congress on said ballot; another bore evidence of having been stamped in the square opposite the name of William A. Henneger, for Congress, on said ballot, and of having the stamp erased by a knife or some other sharp instrument, so that it made a hole clear through the ticket, and was also stamped to the left of each candidate on the Republican ticket except Heber Stoddard. Five of said twenty-one ballots were stamped plainly and clearly in one of the large squares containing a device, and one of them, in which the stamp was in the square containing the eagle at the head of the

Sego *v.* Stoddard.

Republican ticket, also was clearly and plainly stamped between the word Republican at the top of the ticket and to the left of the name William Johnston on said Republican ticket; another is stamped in the square surrounding the rooster, and it is stamped in the square to the left of each of the names in the Democratic ticket; another stamped in the square surrounding the rooster is also stamped on the square to the left of each of the names on the Democratic ticket; another stamped in the square inclosing the eagle is also stamped to the left of the names of Allen Reynolds and Joseph Sego on the Democratic ticket, it appearing that there was a full list of candidates' names for the various offices printed on the Republican ticket, including the offices for which Allen Reynolds and Joseph Sego were candidates; another stamped in the square inclosing the rooster is also stamped in the square to the left of the name of Allen Reynolds on the. Democratic ticket; another ballot was stamped to the left of the names of Beck and Sego in the Democratic ticket and Coats in the Republican ticket, Stoner in the prohibition ticket, Yeoman, Shultz, Jones, Green, and Peck in the People's ticket, and is also stamped on the square to the left of the place for commissioner of the third district of Porter county in a square opposite to which there is no candidate's name printed, and the ticket as to that office is left blank, another stamped in the squares to the left of the names of Hammond, Bartholomew and Sego on the Democratic ticket, and to the left of the name of Burstram on the Republican ticket, and on the squares to the left of the names of Shultz, Green, Peck, and Hamfeldt in the People's ticket, also in the squares to the left of the places for candidates for prosecuting attorney, county surveyor, and commissioner of the third district on the Prohibition, there being no candidate named on that ticket for either of these offices;

and as to them the said Prohibition ticket being blank; four of these rejected ballots contained large blurred marks or blotches in the square surrounding the device, four or five times as large as the ordinary stamp mark; two of these were voted for appellant and two for appellee.

This leaves for consideration but five of the twenty-one rejected votes. These all contained more than one stamp mark in the large square inclosing the device.

It is further found that these twenty-one votes rejected by the circuit court bore no other marks than those above indicated, and that sixteen of them were so stamped as to indicate an intention to vote for appellant, and five of them were so stamped as to indicate an intention to vote for appellee.

As we have seen, without these twenty-one votes the count stands 2,046 for appellee and 2,039 for appellant, about which there is no disagreement.

It is not contended by appellant's learned counsel, as we understand them, that these twenty-one ballots were marked or stamped in the manner provided by what is known as our Australian ballot law; indeed it is virtually conceded that these ballots were not stamped and marked according to the strict letter of that law. But it is insisted that such law, as to its directions for stamping and marking ballots, is not mandatory, but directory simply.

So much of sections 45 and 52 of said law, as amended by the act approved March 6, 1891, pp. 129 and 133, that is applicable, reads as follows:

Section 45. ''The voter shall then, and without leaving the room, go alone into any of the booths which may be unoccupied and indicate the candidates for whom he desires to vote by stamping the square immediately preceding their names * * * *Provided, however,* That if he shall desire to vote for all the candidates of one

party or group of petitioners, he may place the stamp on the large square inclosing the device and preceding the title under which the candidates of such party or group of petitioners are printed, and the vote shall then be counted for all the candidates under that title. If the voter stamps the large square inclosing the device, he shall not stamp elsewhere on the ballot, unless there be no candidate for some office in the list printed under such stamped device, in which case he may indicate his choice for such office by stamping the square to the left of the name of any candidate for such office on any other list; a stamp on a ballot in violation of this provision shall be treated as a distinguishing mark. If a stamp touches a square it shall be counted on the square, but a stamp that touches no square shall be treated as a distinguishing mark. * *

"Section 52. Any ballot which shall bear any distinguishing mark or mutilation shall be void and shall not be counted."

The ballot containing a lead pencil mark across the name of Thomas Hammond was in violation of the letter of the statute just quoted, which forbids the counting of a ballot with a distinguishing mark. The one which had been stamped in the square opposite the name of Hennegar, and that stamp mark erased so that a hole was thereby made through the ticket, though otherwise properly stamped at other places on the ballot, is in the same fix.

The one stamped in the square containing the device at the head of the Republican ticket, and also stamped between the word Republican at the top of the ticket and to the left of the name of William Johnston on said Republican ticket, is in violation of section 45, which forbids a stamp anywhere else on the ticket when stamped in the square containing the device, unless there be no

candidate for some office in the list printed under the stamped device. The exception could not apply, because the additional stamp here was in the Republican ticket. The statute imperatively requires such additional stamp to be treated as a distinguishing mark, and the other section declares such a ticket to be void, and forbids it to be counted.

The two stamped in the square surrounding the rooster, and also in the square to the left of each of the names in the Democratic ticket, fall in the same category as the last one above mentioned. The one stamped in the square enclosing the eagle and also stamped to the left of the names of Allen Reynolds and Joseph Sego on the Democratic ticket, there being a full list of candidates on the Republican ticket for the various offices, including the offices for which Reynolds and Sego were candidates, is in violation of that part of said section 45, forbidding additional stamps on the ticket when the large square enclosing the device is stamped where there is a full list of candidates under the device stamped, and declaring such additional stamp a distinguishing mark, and the other section, 52, declaring it void and forbidding it to be counted.

The one stamped in the square enclosing the rooster, and also in the square to the left of the name of Allen Reynolds on the Democratic ticket, falls in the same category as the one before the last. The one stamped to the left of Beck and Sego in the Democratic ticket, and Coats in the Republican ticket, Stoner in the Prohibition ticket, Yeoman, Shultz, Jones, Green, and Peck in the People's ticket, and also stamped on the square to the left of the place for commissioner of the third district of Porter county in a square opposite to which there is no candidate's name printed on the ticket, that office being left blank, is a violation of said section 45, declaring

a ticket void, it being a distinguishing mark to stamp at another place than on the device, and forbidding the same to be counted. There are only the squares to the left of names on the various tickets and the square enclosing the device that can be lawfully stamped by the provisions of section 45. A stamp at or in a square opposite no candidate's name is a distinguishing mark.

The one stamped in the squares to the left of the names of Hammond, Bartholomew, and Sego on the Democratic ticket, and to the left of the name of Burstram on the Republican ticket, and also on the squares to the left of the names of Shultz, Green, Peck, and Hamfeldt in the People's ticket, and also in the square to the left of the places for prosecuting attorney, county surveyor, and commissioner of the third district on the Prohibition ticket, there being no candidate named on that ticket for either of these offices, said ticket being blank as to said offices, is in the same category as the last one above mentioned.

We need not, and do not, pass upon the validity of the four ballots rejected because they each contained large blurred marks or blotches in the square surrounding the device four or five times as large as the ordinary stamp mark, because two of them were for appellant and two were for appellee, making the result the same whether they are counted or not.

The five remaining, rejected ballots each contained more than one stamp mark in the large square enclosing the device, were stamped contrary to section 45, the literal meaning of which is that one stamp mark is to be placed in any square, and no more; it violates section 52, in that such unnecessary stamp marks are distinguishing marks, and by its terms the ballots are made void and are forbidden to be counted.

Vol. 136—20

It is contended that the statute is directory merely, and not mandatory, as to the method of marking ballots or stamping them.

This court, in speaking of this very provision of the law in *Parvin* v. *Wimberg*, 130 Ind. 561 (566), said: "If we hold this statute to be directory only and not mandatory, we are left entirely without any fixed rule by which officers of election are to be guided in counting the ballots."

Appellant's counsel earnestly insist that though the ballot is not stamped as the statute requires, and in violations of its terms, yet unless there is proof that the unauthorized or prohibited marking was done by the voter for a corrupt motive the ballot must be counted. Such a construction would be utterly subversive of the leading idea, thought, and purpose of the act.

At the time the Legislature met, that passed the act, there was a general belief in the public mind that the most threatening evil to government by the people was bribery, or vote buying, at elections. The evil was more dangerous in our State than in many of her sisters, because the two leading political parties were so nearly matched in numbers, thus rendering it practicable to change the result by the purchase of a few thousand votes.

Criminal statutes imposing severe penalties against the crime had proven but idle and powerless fulminations, at which both the buyer and seller laughed, feeling that their mutual interest would hold the secret of their crime against free government securely locked in their breasts. So that the statute was the outgrowth of the desire of all to rid the State of the burning disgrace and ominous danger to popular government. And the leading idea and thought of the whole act was not to afford relief against the fraud of vote buying and bribery

at elections after its commission, but it was to devise a plan by which the honest voter could not only be freed from intimidation by making his vote a secret known only to himself and his God, but it was to absolutely shut the door against making merchandise of his vote by the corruptible voter as near as human ingenuity could devise such a plan. That the plan has proven eminently successful is evidenced by the fact that all political parties warmly approve the law, and that thirty odd of our sister States have since substantially adopted it.

The idea was not, as appellant's counsel seem to think, to so provide as to render it impossible for the purchased or bribed voter to afterwards identify the ticket he voted by looking at and inspecting it, because the other provisions of the act provide for a destruction of the ballots after they are counted, and before anybody except the officers can see them. But it was to guard against the possibility of the vote seller indicating to the buyer in advance how his ballot would be distinguished from the other ballots in the box, so that the buyer or his agent, who may be one of the election officers, could tell, when the bribed voter's ballot was reached in the count, that such bribed voter had carried out his contract.

It was believed that if it could be rendered impossible for the buyer or his agent to identify the ballot voted by the purchased voter from a mere indication beforehand how it should be marked, the desired end would be reached, because it was believed that as a general thing a vote buyer would not risk his money on a vote seller without some assurance other than the mere word of the bribed voter. To that end, a stamp, the same stamp, is required to be used in marking ballots and indicating the voter's choice, instead of a pen or pencil, which could

be given a peculiar turn or a peculiar mark so as to distinguish the ballot. If that is true, how much more is it true that to carry out the general intent of the act, the ballots here in question are all in violation of the act. Many of them are expressly declared, by the terms of the act, void, and the others are such as render it possible to identify the ballots by the person engaged in buying them. See *Betchel* v. *Albin,* 134 Ind. 193, 33 N. E. Rep. 967.

Without counting the two tickets rejected by the court because they were not protested, the appellee has a clear plurality of all the votes by five.

The judgment is therefore affirmed.

