Tombaugh v. Grogg.

## Tombaugh v. Grogg.

[No. 18,906.    Filed March 26, 1901.]

| 156 | 355 |
| 158 | 490 |
| 156 | 355 |
| 161 | 121 |
| 161 | 122 |
| e161 | 409 |
| 156 | 355 |
| 163 | 448 |

Appeal and Error.—*Elections.—Contested Ballots.—Bill of Exceptions.*—In an appeal from an action to contest an election the original ballots should be incorporated in the bill of exceptions containing the evidence instead of copies thereof. *p. 357.*

Same.—*Bill of Exceptions.—Evidence.*—The bill of exceptions containing the evidence is properly in the record where it is disclosed by the record that it contains all of the evidence, that it was presented to the judge for signature within the time granted by the law or by the court, and that the same was signed by the judge and filed with the clerk. *pp. 357, 358.*

Same.—*Bill of Exceptions.—Original Bill.*—Although appellant filed a written precipe with the clerk, directing the making up of the transcript, which amounted to a request for a copy of the bill of exceptions, it does not follow that an oral request was not subsequently made to insert the original, and where the original bill is in the transcript it will be presumed, in the absence of anything to the contrary, that the clerk incorporated the same at the subsequent oral request of the appellant. *p. 358.*

Same.—*Bill of Exceptions.—Signature of Judge.*—In the authentication of the bill of exceptions it is not necessary that the judge

Tombaugh *v.* Grogg.

certify that it contains all the objections, rulings and exceptions reserved during the trial, since the act of affixing his signature amounts to an affirmation of all of the things enjoined by law. *p. 359.*

ELECTIONS.—*Ballots.—Distinguishing Marks.*—A ballot containing no mark or character upon it except a slight impression of the regular stamp immediately above the party emblem in the large square inclosing the emblem, and immediately below the emblem a heavy daub, irregular in outline and four times as large as the face of the stamp, was properly rejected as containing a distinguishing mark. *p. 360.*

SAME.—*Protested Ballots.*—Under the provisions of §6248 Burns 1894, relative to the canvass of votes, a ballot which has been regularly cast by an elector that exhibits any of the elements of discredit, and objection is made by a member of the board to its being counted, whether it is or is not counted, it is a protested ballot and should be preserved for review. *pp. 360-363.*

SAME.—*Ballots.—Distinguishing Marks.*—A ballot containing a clean and distinct impression of the regular stamp in the large square containing the party emblem, and entirely free from any mark, spot or character, except small smears of the same color as the impression of the stamp near the bottom of the ballot, indicating the merest touching and movement of the stamp from left to right, was fair and should have been counted, as such mark was not a distinguishing mark within the meaning of the law. *pp. 363, 364.*

From the Fulton Circuit Court. *Reversed.*

*R. J. Loveland, H. P. Loveland* and *N. N. Antrim,* for appellant.

*M. L. Essick, F. D. Butler, W. C. Bailey* and *C. A. Cole,* for appellee.

HADLEY, J.—Appellant and appellee were candidates for the office of trustee of Perry township in Miami county, at the November election, 1894. There were counted to each 185 votes. Appellant commenced proper contest proceedings, which by appeal and change of venue reached the Fulton Circuit Court, where the case was tried, and, upon a general finding supporting the original count, the court gave judgment for the appellee. The question in this appeal is narrowed to two ballots, both of which were cast for appellant, but neither of them counted, upon the ground that they bore distinguishing marks. If either one of these

ballots should have been counted, the judgment must be reversed. One of them (known in the record as twenty-nine G) was admitted in evidence; the other (known in the record as thirty-two N) was excluded.

Appellee insists that the disputed ballots are not properly before this court for each of three reasons: (1) Because the original thereof, instead of copies, is incorporated in the body of the bill of exceptions containing the evidence. This objection is ruled against appellee by *Zeis* v. *Passwater,* 142 Ind. 375, 382; (2) it is contended that the bill of exceptions containing the evidence is not made up and certified by the stenographer in conformity to any statute, and that it is insufficient for failure to show that the stenographer was first sworn to take and make a true and impartial report of all the evidence. It is apparent that an effort has been made to comply with the act of March 8, 1897, in respect to bringing the evidence into the record on appeal. Section 1 of the act referred to (Acts 1897, p. 244) is as follows: "That to make the evidence, and all rulings of the court in respect to the admission and rejection of evidence and the competency of witnesses and the objections and exceptions thereto in any civil or criminal cause a part of the record upon appeal to the Supreme or Appellate Court, it shall be sufficient if the transcript contain the original bill of exceptions embracing all such evidence; including that which is oral, documentary and by deposition offered and heard in such cause; and all such rulings, objections and exceptions: *Provided, however,* That it shall appear from the record that such bill was presented to the proper judge of the trial court for settlement and signature within the time permitted by law and that allowed by the court, and that the same was signed by the judge and filed with the clerk of said trial court or in open court. And it is hereby made the duty of the clerk of any trial court, when requested to do so by the party appealing, to embrace in the transcript such original bill of exceptions instead of a copy thereof." It should be noted

from this statute that the certificate of the stenographer, however good, or bad, has not the slightest effect upon the sufficiency, or insufficiency, of the bill of exceptions. . The act of 1897 does not require that the evidence shall be taken, and written out and the bill prepared by a stenographer. It may be quite as sufficiently done by an attorney, or by the clerk or the sheriff, for that matter. The things essential to such a bill of exceptions are that it shall appear from the record that such bill contains all the evidence, was presented to the proper judge for settlement and signature within the time granted by the law or by the court, and that the same was signed by the judge, and filed with the clerk, or in open court. *Hauger* v. *Benua*, 153 Ind. 642, 646. These are the only tests of verity and authenticity required by the statute, and it appearing that these three things concurred, in season, and before the bill was incorporated into the transcript, and nothing appearing to the contrary, the bill is properly admitted to the record on appeal. *Adams* v. *State, post,* 596.

We can not admit as valid the further objection on this point, that the clerk had no such request from the appellant as authorized the incorporation of the original bill of exceptions into the transcript, instead of a copy, under the provisions of the act of 1897 above quoted. The request upon the clerk here provided for may be either written, or oral, and conceding all that is claimed by appellee, that appellant filed a written precipe with the clerk directing the making up of the transcript, and which included "the bill of exceptions filed in said cause", and that this amounts to a written request for a copy of the bill of exceptions, and not the original, it by no means follows that an oral request was not subsequently made to insert the original, and not a copy. We find the original in the transcript; it may lawfully be here if requested by the appealing party, and, in the absence of anything to the contrary, we must presume that the clerk discharged his official duty and incorporated it upon the subsequent oral request of appellant.

Tombaugh v. Grogg.

(3)   It is asserted that the certificate of the trial judge
is insufficient properly to authenticate the bill of exceptions.
The introductory part of the bill recites: "Be it remem-
bered that on *   *   *   the following evidence was de-
livered and the rulings of the court with respect to the ad-
mission and rejection of evidence, and the objections and
exceptions thereto, were made and taken as noted." Then
follow many pages of questions and answers interspersed
with offers, objections, rulings, and exceptions, at the end
of which the trial judge notes, over his signature, a presenta-
tion to him of the above bill of exceptions for settlement
"this 27th day of April, 1898", and then the bill proceeds:
"And this was all the evidence given in said cause. And
the plaintiff now tenders this his bill of exceptions, and
prays that the same may be signed, sealed, and made a part
of the record, which is done this 27th day of April, 1898.
A. C. Capron, Judge Fulton Circuit Court."

Appellee contends that the authentication of the bill is
inadequate for failure of the judge to certify that it contains
all the objections, rulings, and exceptions reserved during
the trial.   We can not assent to the position assumed. The
settling of a bill of exceptions is as much a judicial act as
the rendition of a judgment.   And it is as much the duty
of the trial judge in the settlement of a bill to see that it
contains all the law requires, namely, all the evidence given
and offered, and all the objections, rulings, and exceptions
reserved, as it is in the rendition of a judgment his duty to
consider all the relative rights of the litigants as established
by the evidence.   In either case the law does not require
him to certify to anything, but in the solemn act of affixing
his official signature is implied an affirmation of all the
things enjoined by the law.   The recitals at the opening of
the bill are a part of the bill.   Rejected offers, objections,
rulings, and exceptions, are noted throughout the body of
the bill.   It is expressly stated by the judge that it contains
all the evidence, and the affixing of his official signature must

be accepted ·by this court as imparting to the document the character of a true embodiment of all the essential elements of a bill of exceptions.

The record shows that the motion for a new trial was overruled and final judgment entered on March 4, 1898, and ninety days were given in which to prepare and file a bill of exceptions. The bill was presented to the judge for settlement April 27, 1898, and upon the same day signed by him, and upon May 11, 1898, the same was filed in open court. This discloses a compliance with the act of March 8, 1897, *supra,* and the bill of exceptions and disputed ballots are, therefore, in the record.

This election was held under the law of 1891 which required the use of a stamp in indicating the choice of candidates. Ballot designated as G twenty-nine, which was admitted in evidence, had no mark or character upon it, except that in the large square inclosing the party emblem there appears immediately above the emblem a faint impression of the regular stamp, and immediately below the emblem there appears a heavy purple daub, the same in color as the impression made with the inked stamp in lawful use, irregular in outline, and four times as large as the face of the stamp. It is such as will readily and distinctly appear to be violative of the statute, and under the rule declared in *Sego* v. *Stoddard,* 136 Ind. 297, 22 L. R. A. 468, was properly rejected by the court as containing a distinguishing mark.

The identity of ballot thirty-two N and the failure of the board of election to count it are conceded, but appellee earnestly contends that it was rightfully excluded from the evidence because it is not shown that it was protested by a member of the board, and was therefore neither a protested nor a disputed ballot, nor belonged to that class of ballots which it was the duty of the inspector to preserve for submission in evidence in case of a contested election; the argument being that as the ballot was not protested, nor dis-

puted by a member of the election board, and not counted by general consent, it should have been destroyed by the board upon completion of the count, by burning, and that the unauthorized preservation of the ballot did not make legal evidence of that which illegally existed.   So much of the statute as bears upon this point, being part of §13, Acts 1891, p. 133, §6248 Burns 1894, reads thus:  "In the canvass of the votes any ballot which is not indorsed with the initials of the poll clerks, as provided in this act, and any ballot which shall bear any distinguishing mark or mutilation shall be void and shall not be counted, and any ballot or part of a ballot from which it is impossible to determine the elector's choice of candidates, shall not be counted as to the candidate or candidates affected thereby: Provided, however, That on protest of any member of the board such ballot, and all disputed ballots shall be preserved by the inspector,  *  *  *  and in any contest of election such ballots and seals may be submitted in evidence. On completing the count and recording the same on the tally sheets, all the remaining ballots, except those marked, mutilated or otherwise defective, as in this section hereinbefore described, shall be destroyed by the election board by totally consuming by fire before adjournment."  .

We do not feel warranted in giving the statute the narrow construction contended for.   It reads that in the canvass of the votes any ballot which does not contain the initials of the poll-clerks, or which bears a distinguishing mark, or is mutilated, or any part of a ballot that is so uncertain as to make it impossible to determine therefrom the elector's choice shall not be counted.   Provided that on the protest of any member of the board, such ballots and all disputed ballots shall be preserved by the inspector.   This means that any ballot which has been regularly cast by an elector that exhibits any of these elements of discredit, and objection is made by a member of the board to its being counted, whether it is, or is not counted, it is a protested

ballot, and shall be preserved, and the elector who cast it and the interested candidates shall have the benefit of a review of the action of the board in case of a contested election. Shall it be said that if the objection to counting such a ballot shall come from the unanimous voice of the board, that it is any less a protest? Protest means "to make a solemn declaration of opposition" (Webster's Int. Dic.), and it is strange logic to affirm that the unanimous opposition of the board to the counting of a ballot is not a protest, and that the opposition of a single member is a protest. Besides, one of the chief evils which the law seeks to circumvent would be entrenched by a holding that the unanimous consent of the board, obtained by fair or fraudulent means, to withhold the counting of a ballot, authorizes or requires a destruction of the ballot. If the evidence may be thus destroyed, and a wrong thus effectually protected, the right of an elector to have his ballot counted as cast may be irremediably subverted, and a candidate, rightfully elected, deprived of his office by the evil machinations of dishonest election officers.

It seems clear that the statute does not authorize the destruction of any uncounted *voted* ballot. Section 6247 Burns 1894 reads as follows: "Immediately on closing the polls, the board shall count all the ballots remaining *unvoted*, record the number of the same on the tally sheets, and destroy all of such ballots by totally consuming by fire." Section 6248, *supra,* in directing the procedure of the board after the polls have been closed and all unvoted ballots have been destroyed, provides that on completing the count and recording the same on the tally-sheets all remaining ballots (that is, all voted ballots that have been counted without question) shall be destroyed by fire, "except those marked, mutilated, or otherwise defective", that is, except those bearing distinguishing marks or mutilations, or are otherwise defective as legal ballots, which necessarily includes within the exception all voted ballots that have not

been counted because of legal objection. In this instance the election officers so regarded their duty and preserved ballot thirty-two N in the manner prescribed by statute. It was therefore a proper item of evidence in this case.

Should it have been counted for appellant? This ballot has, clearly within the body of the large square inclosing the party emblem, a clean and distinct impression of the regular stamp; otherwise the ballot is entirely free from any mark, spot, or character, except that near the bottom between two names standing for the office of constable are three small, faint, smears, of the same color as the impression of the stamp, each separated from the other by one-eighth of an inch, and indicating a straight, horizontal line—the first about one-sixteenth of an inch wide and one-eighth of an inch long, the second not wider than a pin scratch and one-eighth of an inch long, and the third one-thirty-second of an inch wide and one-eighth of an inch long; the three shadowy stains, indicating the merest touching and movement of the inked stamp from left to right, the stains becoming fainter as the movement progressed, so that the last stain is hardly discernible to the naked eye. As a whole the mark is such as to be unnoticed in a casual observation, and of a character to forbid the belief that it was made by design. It is quite supposable that the voter in handling the ballot with the inked stamp in hand accidentally and unwittingly suffered the stamp and ballot to come in slight contact, and the stain being so indistinct as to be imperceptible in the dim light usual to the booth the ballot was executed and cast without the knowledge of the voter that such stain was upon it. In such case the mark was not a distinguishing mark within the meaning of the law. A distinguishing mark that will invalidate a ballot is such a one as fairly imputes upon its face design and a dishonest purpose. The slight soiling of a ballot, which reasonably appears to have been the result of accident, or want of due care, is not sufficient to condemn it, if otherwise fair. As was

Baltimore, etc., R. Co. *v.* Peterson, Adm.

said in *Borders* v. *Williams,* 155 Ind. 36, at page 43: "It is purity of election and a free and honest expression of the voter's will that is aimed at, and a substantial compliance with the law in the execution of the ballot will suffice if the general appearance of the ballot is such as clearly to indicate an honest effort by the voter to comply with the law, and his choice of candidates may be clearly ascertained." Ballot thirty-two N should have been admitted in evidence and counted for appellant.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.