## IN RE ELECTION OF CLERK OF COMMON SCHOOL DISTRICT NO. 107, FILLMORE COUNTY.
## OTTO MATHISON v. J. R. MEYER.[1]

May 29, 1924.

No. 23,978.

**Proof of illegal voting.**

1. Direct evidence as to how illegal votes are cast is not necessary. In an election contest that fact may be proved by circumstantial evidence.

**Statute inapplicable to annual school election.**

2. The Corrupt Practices Act, sections 567-609, G. S. 1913, does not apply to annual school district elections.

[1] Reported in 199 N. W. 173.

Otto Mathison appealed from the action of the canvassing board in declaring J. R. Meyer elected clerk of Common School District No. 107, Fillmore county at the July, 1923, election to the district court for that county. The appeal was heard by Peterson, J., who made findings and ordered judgment in favor of Otto Mathison. Contestee's motion for a new trial was denied. From the judgment entered pursuant to the order for judgment, contestee appealed. Affirmed.

*S. C. Pattridge* and *Hopp & Larson*, for appellant.

*F. G. Sasse* and *Catherwood & Nicholsen*, for respondent.

STONE, J.

This appeal from the judgment brings here for review the decision below reversing the result of the 1923 election of clerk of School District No. 107, Fillmore county. The election was held in the usual place, but not altogether in the usual manner, on July 21, 1923.

Mr. Mathison, contestant and respondent, and Mr. Meyer, contestee and appellant, were opposing candidates. Mr. Meyer was given the decision by the tellers and chairman who declared him elected by a vote of 30 to 24 for his opponent.

After the trial of this contest, the result was somewhat different. The trial judge considered that 8 of the voters for Meyer were "colonists," imported for the occasion, without a legal residence in the district and, in consequence, he subtracted their votes from the total for Meyer. In addition to that, he counted for Mathison the vote of an elderly lady who desired to cast her ballot for him, but was prevented. The election officials refused her vote because they considered her, at the time being, non compos mentis. In that manner, 8 votes were subtracted from Meyer's total and one added to Mathison's, so that the decision and judgment below was an adjudication of the election of Mathison by a vote of 25 as against 22 for his opponent, Meyer.

Nothing can be gained by further examination of the facts concerning any one of the contested votes. There is ample evidence to sustain the findings concerning them. For us to interfere to

such an extent as to reverse, would be an invasion of the province of the trial judge. He was impressed, and properly, by the "influx" of the 8 voters whose ballots were improperly received. It is an unexplained coincidence that all of them settled in the district on June 20, which was the last day upon which they could have begun a residence qualifying them to vote at the election which was held on July 21. That circumstance is without satisfactory explanation and is attended by enough of obvious suspicion to raise a very serious question as to the good faith of this sudden accession to the population of the district. There is much more in the record as to each of the individuals in question, and, as to each of them, we find sufficient evidence to support 'the decision below.

The appellant urges a reversal upon the ground that there was no direct proof as to how the 8 colonists voted. That is true, the finding that they voted for Meyer being put entirely upon circumstantial evidence which may be summed up in the statement that during their brief stay in the district, they "trained" with Meyer and "his crowd."

That evidence sustains the finding. From what the record discloses, it is impossible to suppose that any of the ladies and gentlemen in question came into the district to vote for Mathison. The argument of circumstances is all the other way. Counsel for respondent were probably as discreet as they admit they were in not risking their case by propounding to those of the alleged colonists who were witnesses, the direct question as to how they voted.

For obvious reasons, arising from the inviolable secrecy of the ballot (9 R. C. L. 1150), and the opportunity for false testimony under such circumstances that disproof would be impossible, direct evidence as to how contested votes were cast is not required. Circumstantial evidence is sufficient if it has the requisite degree of persuasion. A voter's affiliations and pre-election activities ordinarily are a reliable indication of how his vote was cast. In the absence of better proof, a finding based on evidence of that kind will not be disturbed. White v. Slama, 89 Neb. 65, 130 N. W. 978, Ann. Cas. 1912C, 518; Boyer v. Teague, 106 N. C. 576, 11 S. E. 665, 19 Am. St. 547; Lane v. Bailey, 29 Mont. 548, 75 Pac. 191; People v.

Turpin, 49 Colo. 234, 112 Pac. 539, 33 L. R. A. (N. S.) 766, Ann. Cas. 1912A, 724; Montoya v. Oritz, 24 N. M. 616, 175 Pac. 335. The "best available evidence" tending to show how an illegal vote was cast is all that is required. Berg v. Veit, 136 Minn. 443, 162 N. W. 522. See also Nelson v. Bullard, 155 Minn. 419, 430, 194 N. W. 308.

Appellant also complains because the respondent was given the benefit of the votes of certain persons who were transported to the school meeting by him, or those acting on his behalf. Appellant goes so far as to charge him with permitting the use of his automobile in bringing to the polls voters who otherwise might not have gotten there. That conduct is condemned, not as malum in se, but as malum prohibitum upon the ground that the prohibitions of the Corrupt Practices Act (sections 567-609, G. S. 1913), apply. We hold to the contrary.

The original Corrupt Practices Act was chapter 277, p. 664, Laws 1895. Section 25 thereof expressly exempted from its application village, township and school district elections. When that act was carried forward into the revision of 1905, section 25 was omitted. That omission cannot be taken as expressing an intention to extend the provisions of the act to the elections theretofore expressly excepted. Under the rule of Becklin v. Becklin, 99 Minn. 307, 109 N. W. 243, so sweeping a change cannot result from so slight a change in phraseology.

Aside from that, the provisions of the Corrupt Practices Act cannot be applied to school district meetings. Their tenor from first to last indicates a contrary intention. Our decision in Miller v. Maier, 136 Minn. 231, 161 N. W. 513, 2 A. L. R. 399, is not out of harmony with our holding here, for, in that case, the question was not raised. It was not there suggested that the prohibition of the Corrupt Practices Act then in question did not apply to a town election. In consequence, the point was not passed upon one way or the other.

The election of school district officers takes place at the annual school meeting which is governed by section 2710, G. S. 1913. Certainly, it was never intended by the legislature to apply to so simple and democratic a thing as the conventional annual meeting of a

Minnesota school district, the complex and multifarious provisions found in the Corrupt Practices Act. The very scheme of that legislation, as well as the language used in the expression of its purposes, makes such a result impossible.

Order affirmed.