CARL (AL) AURA AND ANOTHER v. WALLACE BRANDT.[1]

Nos. 32,929, 33,091.

November 28, 1941.

[1]Reported in 1 N. W. (2d) 381.

See 211 Minn. 614, 299 N. W. 910.

*Thomas H. Strizich* and *Clarence H. Kleffman,* for contestee-appellant.

*H. A. Frankson* and *J. C. Henley,* for contestants-appellants.

PETERSON, JUSTICE.

On December 3, 1940, an election was held in the village of Hibbing to fill the offices of recorder and one trustee. Contestant Aura and contestee, Brandt, were candidates for recorder. Contestant Arthur Reese is a voter. For convenience, we shall refer only to the candidates as contestant and contestee, respectively. In an election contest the court below found that contestant received 3,521 votes and contestee 3,512 votes; that contestant was elected by nine votes, but that he was not entitled to possession of the office for failure on his part to file a verified itemized statement of his campaign expenditures as required by the corrupt practices act, Mason St. 1940 Supp. §§ 601-10(1) to 601-10(1)x.

Contestants appeal from the judgment, and contestee appeals from an order denying his motion for a new trial and other relief.[2]

The questions here, as below, relate to the counting of certain ballots claimed to have distinguishing marks on them, the legality of certain absentee votes, and the application of the provision of the corrupt practices act requiring candidates to file verified item-

---

[2]See Aura v. Brandt, 211 Minn. 614, 299 N. W. 910.

ized statements of their campaign expenditures. The facts so far as pertinent will be further stated in connection with our consideration of the legal questions raised by the appeals.

■ The largest group comprises the ballots claimed to have distinguishing marks on them which rendered them illegal.

A ballot so marked by a voter that it can be distinguished is held to be invalid to preserve secrecy in voting and to prevent bribery, fraud, and intimidation at elections. Elwell v. Comstock, 99 Minn. 261, 109 N. W. 113, 698, 7 L.R.A.(N.S.) 621, 9 Ann. Cas. 270. Care must be taken not to disfranchise the voter, as well as to preserve the purity of elections. So far as possible, the law seeks to achieve both of these purposes. Our numerous decisions from Quinn v. Markoe, 37 Minn. 439, 35 N. W. 263, to Pye v. Hanzel, 200 Minn. 135, 273 N. W. 611, and Hanson v. Emanuel, 210 Minn. 271, 297 N. W. 749, have stated and reiterated the rule. A distinguishing mark on a ballot is one made by a voter which is not an honest effort to indicate his choice either of candidates or propositions and which is effective to distinguish his ballot. There must be some wrongful purpose on the part of the voter to identify his ballot. Conversely, a mark placed on a ballot in an honest effort of the voter to indicate his choice and not to identify his ballot is not a distinguishing mark within the rule. Generally, it may be said that the distinction is between honesty and dishonesty in voting. Consequently every mark by which a ballot can be identified does not invalidate it. For example, where only one voter in a precinct votes by means of a sticker or by writing in the name of the candidate of his choice, the ballot can be identified, but it cannot be legally rejected because the voter was but exercising his right to vote in a manner authorized by law. See Rexroth v. Schein, 206 Ill. 80, 69 N. E. 240. In the particular case the application of these rules is not always a simple matter.

(a) There were 15 ballots on which were either written or printed by voters, substantially, the words "For Mayor, I. R. Galob." The office of mayor was not to be filled at the election. No spaces were provided on the ballots for voting for candidates for

that office. Prior to the 1939 election the office of mayor was filled annually. By L. 1939,. c. 185, the term was extended from one to two years. Beginning with the 1939 election the mayor was elected for a two-year term. The constitutionality of the law was questioned in another jurisdiction. On election day an article appeared in a daily newspaper published in Hibbing stating that the statute extending the mayor's term was unconstitutional. If the holding was correct, the office should have been filled at the 1940 election by electing a mayor for a term of one year.

A number of voters who were in contestant's headquarters heard about the decision. Believing that the office of mayor also was to be filled at the election, they decided to vote and urged others to vote for Galob for mayor. It was then too late to obtain judicial correction of the ballots, which had already been printed and distributed to the election officials, so as to provide spaces for voting for mayor. They wrote Galob's name on the ballot for the purpose of electing him mayor. The finding amply sustained by the evidence is "that those who wrote his [Galob's] name thereon did so with that intention [of electing Galob mayor] and not with the intention of identifying their ballots, or any of them, and that all of said ballots are legal votes."

If the voters who wrote Galob's name on their ballots were right in their supposition that the office of mayor was to be filled at the election, there can be no doubt that the ballots were legal for Galob as well as for the others for whom they were marked. Where an office is to be filled at an election the voter may indicate his choice on the ballot although the ballot contains no appropriate blank for that purpose. Snortum v. Homme, 106 Minn. 464, 119 N. W. 59; Carlough v. Ackerman, 74 N. J. L. 16, 64 A. 964.

The rule is the same where the office is not to be filled at the election and there is an honest belief on the part of the voters, resting upon reasonable grounds, that there is a vacancy to be filled. The fact of the voter's good faith and reasonable belief

may be ascertained by looking to the circumstances of the election and may be found from evidence that voters understood that the person whose name was written on the ballot was a candidate, although his name did not appear thereon as such, and were urged to vote for him. Keenan v. Briden, 45 R. I. 119, 119 A. 138; Winn v. Blackman, 229 Ill. 198, 82 N. E. 215, 120 A. S. R. 237. The case of In re Application of Murphy, 165 App. Div. 308, 151 N. Y. S. 267, 268, is indistinguishable from the instant one. There, 17 voters in good faith believed that the office of alderman was to be filled at a state election, because of a court decision (by the special term), and wrote on the ballots the name of a person for whom they voted for that office. As a matter of fact, the office of alderman was not to be filled at the election, and the appellate division so held, reversing the special term. Although the court stated that the question whether the office was to be filled was "a debatable" one and that the votes cast for alderman could not be counted for the party for whom they were marked for that office, the writing of the names on the ballots and voting for them for alderman did not constitute distinguishing marks which invalidated the ballots within the meaning of a statute providing that "any mark other than a cross X mark or any erasure of any kind shall make the whole ballot void." The court reviewed numerous authorities and concluded (165 App. Div. 310, 151 N. Y. S. 269):

"If there was a vacancy in fact in the office, then writing the name of the candidate in connection with the office to be filled could not be said to make the same a 'marked ballot,' so as to vitiate it. If there was an honest belief that such vacancy existed, and reasonable ground for such belief, then it must be equally true that a voter who wrote upon his ballot the name of such office, with the name of the person that he desired to fill the same, has not so marked his ballot as to destroy its validity. The alternative would be that the voter must correctly decide the question as to such vacancy at the peril of nullifying his vote for any other candidate upon the official ballot."

That conclusion is in accord with the rule that if the mark is made so as not to identify the ballot, but to exercise the right to vote in good faith, it does not constitute a distinguishing mark. The finding that the ballots on which votes were attempted to be cast for Galob for mayor were valid as to the candidates for other offices is sustained.

(b) Contestee claims that two ballots (exhibits T-31 and Y-5), one torn all the way across the top where it was glued to a pad and the other torn all the way down the left side, were wrongfully rejected. The court found that there was no showing when or how the tears were made. There can be no doubt that these ballots could be distinguished by the tears. The trouble is that the proof does not show that they were made distinguishable by the voters. Where a ballot appears to have been mutilated, it will be presumed to have been done after it was counted by the election officers, upon the theory that such officers know and perform their duty and hence would not receive or count such a ballot. Hanson v. Emanuel, 210 Minn. 271, 279, 1(k), 297 N. W. 749. These two ballots should have been counted for contestee.

Contestant questions six ballots which were cast and counted for contestee. These have small tears such as might have been made in handling them. Ten such ballots were cast and counted for contestant. These were all properly counted as cast for the reasons above stated.

(c) Certain ballots with cross marks on the back are questioned. Three of these (exhibits 22-L, 25-E, and 25-K) were cast and counted for contestant. A cross mark placed on the back of a ballot by a voter is a distinguishing mark which invalidates the ballot. Hanson v. Emanuel, 210 Minn. 271, 279, 1(h), 297 N. W. 749; Pye v. Hanzel, 200 Minn. 135, at pp. 138, 139, 2(a), 273 N. W. 611. These, like other similar ballots deducted from each party, should have been deducted from contestant.

Contestant claims that two ballots had cross marks on the back, but we find that the ballots (exhibits Q-11 and T-32) do not sustain his claim.

(d) Ballot Q-11 has a cross mark on the arrow pointing to the instructions to voters and another one above it. A cross upon the instructions to voters is a distinguishing mark which invalidates the ballot. Rice v. Town Council of Westerly, 35 R. I. 117, 85 A. 553. This ballot, which was cast and counted for contestee, should have been deducted from the number counted for him.

(e) Three ballots marked with check marks and counted for contestant are questioned by contestee upon the ground that they were not marked with crosses. A voter may use uniformly a mark other than a cross in marking his ballot. Mason St. 1940 Supp. § 601-6(10)k(7); Hanson v. Emanuel, 210 Minn. 271, 279, 1(m), 297 N. W. 749; Pye v. Hanzel, 200 Minn. 135, 273 N. W. 611. These ballots were valid and properly counted.

(f) Fourteen ballots were marked regularly with a cross mark for one candidate for recorder and one candidate for trustee and with a diagonal mark in the space to the right of the name of the candidate for recorder which was the same as one of the lines of a cross mark. Ten such ballots were questioned by contestee and four by contestant. A diagonal line which shows that the voter commenced to make a cross, but changed his mind and made the cross in the proper place on the ballot is not a distinguishing mark. Hodgson v. Knoblauch, 268 Ill. 315, 109 N. E. 338, Ann. Cas. 1917E, 653. See Hanson v. Emanuel, 210 Minn. 271, 297 N. W. 749. All these ballots were valid and properly counted upon the theory that the marks were made in an honest effort on the part of the voter to mark his ballot and not to identify it.

Contestant claims that exhibit T-7, which was marked and counted for contestee, should have been rejected because it had two parallel lines to the right opposite contestee's name. These lines cannot be explained as being made in an honest endeavor on the part of the voter to mark his ballot for voting purposes. They serve to identify the ballot. Hence they constituted a distinguishing mark which invalidated the whole ballot. It should have been deducted from the number counted for contestee.

288

(g) Some ballots were marked with a cross opposite the blank for writing in the name of a candidate for trustee. Some of these were marked with crosses for one candidate for recorder and one of the candidates for trustee whose names were on the printed ballot. Two of them were so marked only for recorder. Contestee claims that five ballots of the class first mentioned which were cast for him were erroneously rejected. Contestant makes a similar claim with respect to six ballots and the two marked for recorder and opposite the blank line for writing in the name of a candidate for trustee. We think that all of these ballots were properly rejected. A voting mark placed opposite a blank is not a vote for any candidate, Pye v. Hanzel, 200 Minn. 135, par. 3, 273 N. W. 611, and is without apparent purpose except to identify the ballot. Morrison v. Pepperman, 112 Iowa, 471, 84 N. W. 522; Sego v. Stoddard, 136 Ind. 297, 36 N. E. 204, 22 L. R. A. 468; State ex rel. Springmeyer v. Baker, 35 Nev. 300, 129 P. 452; Sweeney v. Hjul, 23 Nev. 409, 48 P. 1036, 49 P. 169. The California and Michigan courts held to the contrary in Sweetser v. Pacheco, 172 Cal. 137, 155 P. 639; Hawkins v. Voisine, 284 Mich. 181, 278 N. W. 811; but in each of these cases the court failed to consider that such a mark could not be sustained as an honest effort of the voter to mark his ballot to express his choice, or that the mark could only be explained as one made without purpose except to identify it. We think that the rule requiring the rejection of such ballots is in accord with the settled principles by which it should be determined whether or not a mark is a distinguishing one.

(h) There were 155 ballots on which crosses were placed, not in the squares for that purpose at the left opposite the name of the candidate voted for, but in the blank space to the right of his name. Contestee claims that 123 such ballots so marked for contestant were erroneously counted for him. Contestant makes the claim that 32 such ballots marked for contestee were erroneously counted for him. These ballots were properly counted under Mason St. 1940 Supp. § 601-6(10)k(3), which provides: "When a

mark (X) is made out of its proper place, but on or so near a name or space as to indicate clearly that the voter intended to mark such name, the vote shall be counted as so intended." Hanson v. Emanuel, 210 Minn. 271, 279, 1(1), 297 N. W. 749.

One of these ballots (exhibit GG-15), which was cast for contestee, had a distinctive check mark after the cross placed to the right of the name of a candidate for trustee. This ballot should be rejected and deducted from the number counted for contestee, not because of the *place* of the cross mark, but because the *check* was a distinguishing mark invalidating the ballot. This, for the reason that the voter had indicated his choice by the cross mark, thus making superfluous the check mark, which served no function except to identify the ballot. Hodgson v. Knoblauch, 268 Ill. 315, 109 N. E. 338, Ann. Cas. 1917E, 653.

(i) A large number of ballots have retracing lines, heavy markings, loops, and dots on the cross lines and additional lines of various kinds in the markings. The findings and memorandum of the trial judge show that he clearly had in mind the applicable rules in determining which markings constituted distinguishing marks. The memorandum states: "There are varying shades of differences in the manner in which the ballots are marked. I have tried to use the same measuring stick as to each of the parties."

Contestee questions 43 such ballots cast for him and rejected and 78 cast for contestant and counted. Contestant claims that 45 such ballots marked for contestee were erroneously counted and 41 ballots cast for him were erroneously rejected. We have examined all the ballots, but shall not enumerate them. As the court below said, it would not be surprising if some differences were found which appear slight. But the differences found by the court exist, and the findings must be sustained. Some ballots, which were counted, have impertinent lines which the voters evidently made in retracing imperfect crosses caused by the uneven surface on which the ballots rested when they were marked. Such markings are evidence of the voters' honest and *bona fide* efforts to express their choice rather than to identify their ballots. These

ballots were valid. Hanson v. Emanuel, 210 Minn. 271, 277, 1(d), 297 N. W. 749. On the other hand, the ballots which were rejected had marks which could hardly be reconciled with an honest and good faith attempt to mark them solely to express the choice of the voters. Such marks were correctly held to distinguish and invalidate such ballots. Hanson v. Emanuel, 210 Minn. 271, 297 N. W. 749; Pye v. Hanzel, 200 Minn. 135, 273 N. W. 611. The decision is sustained both as to such ballots as were counted and rejected.

One ballot (exhibit Q-13) cast and counted for contestee should be rejected because it has a heavily penciled circle on each end of the lines of the cross marks. The four circles appear like four balls added with conscious effort. Their effect is to distinguish and invalidate the ballot.

(j) On one ballot the voter obliterated by pencil mark the cross opposite contestee's name and then placed a cross opposite contestant's name. An erasure is permissible under Mason St. 1940 Supp. § 601-6(10)k(8). An obliteration is the same as an erasure. Pye v. Hanzel, 200 Minn. 135, par. 6, 273 N. W. 611. Hence the ballot was legal and properly counted.

(k) Contestee claims that the voters used both a cross and a check mark on two ballots cast and counted for contestant, thereby invalidating them. It appears that in each case the voter first made a check mark and then attempted to obliterate it by making a cross mark over it in such a way as to incorporate the check in the cross mark. On the whole, the effort was quite successful. Of course the voter must uniformly use a cross or other mark in marking his ballot. Mason St. 1940 Supp. § 601-6(10)k(7). The use of more than one kind of mark on a ballot is not permissible. Pye v. Hanzel, 200 Minn. 135, par. 2, 273 N. W. 611. This is not a case of attempting to use two marks, the cross and check as claimed, but rather to use a cross only after obliterating the check. Such an obliteration is permissible under the circumstances for the reasons stated in the preceding paragraph.

(1) Contestee claims that a ballot (exhibit 17-M) which was marked with a check opposite contestant's name in the regular space for that purpose and also a check mark to the right of his name was erroneously counted for contestant. Contestant claims that 26 ballots were marked with a cross before the name of a candidate for recorder and a cross after his name also, of which eight were cast for contestant and 18 for contestee. The check mark being a permissible voting mark, we treat all ballots on the same basis. The additional check and cross marks cannot be justified as attempts to mark the ballots for purposes of voting. The voters fully expressed their choice by the marks in the regular spaces for that purpose. Hence the additional check and crosses are distinguishing marks which require rejection of the ballots. Hanson v. Emanuel, 210 Minn. 271, 277, 1(e), 297 N. W. 749. Consequently nine such votes (exhibit 17-M and the eight which contestant concedes have extra cross marks) must be deducted from contestant and 18 (exhibits C-3, F-9, Q-8, T-10, BB-4, BB-8, BB-14, BB-15, DD-5, FF-6, GG-13, II-13, KK-3, KK-5, KK-6, PP-8, TT-1, and Insp. No. 13) from contestee.

Likewise, contestant claims that four ballots cast and counted for contestee should be rejected. Three of these (exhibits C-1, F-1, and H-10) were marked with a cross to the left opposite contestee's name and a check mark to the right. Another (exhibit UU-4) was thus marked, except that the check mark was to the right of the name of the candidate for trustee for whom it was voted. All of these ballots should be rejected as bearing distinguishing marks for the reasons above given.

(m) Contestee contends that a ballot marked for contestant should be rejected because it was marked for both candidates for trustee, there being only one to be elected. The statute declares the effect of such marking. "When a voter has placed a mark (X) against two or more names for the same office, where only one is elected, his vote shall not be counted for either candidate." Mason St. 1940 Supp. § 601-6(10)k(1). It does not invalidate the entire

ballot as against other candidates for whom it is regularly cast. Hence the ballot must be sustained as to contestant.

(n) There were some ballots marked with irregular crosses. Each party claims that some counted for his opponent should have been rejected and that some marked for him and rejected should have been counted. The ground given for the rejection of many of these ballots was that the markings appeared similar to an *A* or *K* when viewed at an angle. An irregular cross of regular size, as here, evidently resulting from retracing the mark because the ballot apparently rested on an uneven surface, is not a distinguishing mark. The ballot should be counted for the candidate for whom the irregular cross was made. Hanson v. Emanuel, 210 Minn. 271, 277, par. 1(d), 297 N. W. 749. There is no doubt that the marks in question appear to be cross marks when viewed straight up and down. It is only when viewed at an angle, and then by a forced construction, that any of them can be said to resemble an *A* or a *K*, and then a most imperfect one. Such a construction is not warranted. A ballot should receive an ordinary and not a forced construction. The ballot should be upheld where when read naturally in the ordinary way it is consistent with innocence, good faith, and honest voting. By these tests, we think the ballots in question should be held legal and that the court below should not have rejected them. Contestant is entitled to 13 such ballots (exhibits 6-N, 9-K, 10-E, 14-G, 15-Q, 19-B, 19-L, 20-I, 20-J, 25-H, 6-G, 6-I, and 6-H) and contestee to four (exhibits T-23, W-1, II-18, and KK-9).

(o) Contestant claims that a ballot cast for and counted for contestee on which the figure *8* was written in pencil over the instructions to voters should be rejected. The placing of a numerical figure on a ballot in addition to the authorized voting marks constitutes a distinguishing mark which renders the ballot void. Pye v. Hanzel, 200 Minn. 135, par. 6, 273 N. W. 611. Hence contestee loses this ballot.

We think that we have discussed all the ballots which contestee claims should be added to his count or deducted from contestant's.

As the result of our decision with respect to the ballots which we have already considered, contestant's vote is increased to 3,536, from which 12 are to be deducted, thus making his net vote 3,524. Contestee's vote has been increased by six and decreased by 26, thereby making his net vote 3,492. Contestant urges further that numerous other ballots cast and counted for contestee should be rejected and that others cast for him and rejected should be counted. Among these are 25 ballots which were either not initialed or irregularly initialed by the election judges. A consideration of these claims would in no event affect the result, although they might, if sustained, increase contestant's plurality by deducting more votes from those counted for contestee or adding some to those counted for contestant. But, since it is not necessary to consider such claims to sustain the decision, we refrain from doing so.

Contestee also claims that 21 absentee votes cast for him and rejected for having been in cast in violation of the absentee voters law were erroneously rejected. For the reasons stated in the preceding paragraph, we deem it unnecessary to consider the matter. If these votes were awarded to contestee it would not change the result. If the 21 absentee ballots were counted for contestee he would have 3,513 votes or 11 less than contestant. Since adding the absentee votes to contestee's total would not change the result, it would serve no useful purpose to consider them further.

Contestant's appeal raises only the question whether or not the provisions of the corrupt practices act requiring a candidate to file verified itemized statements of campaign expenditures apply to the election in question.

It is undisputed that contestant made campaign expenditures and that he failed to file any statement thereof.

The corrupt practices act so far as it relates to corrupt practices applies to village elections. Mason St. 1940 Supp. §§ 601-10(1)(4), 601-10(1)c(6). See *Id.* § 601-11(2)j.

Contestant was guilty not of any corrupt practice, but of failure to file the itemized verified statement of his campaign expenditures.

Every candidate is required by Mason St. 1940 Supp. § 601-10(1)j, to file a verified itemized statement of receipts and expenditures for campaign purposes on the last Monday in August, on or before the tenth day following the primary, on the third Monday in October, and on or before the tenth day following the general election. These filings are in connection with the election of state and county officers, for which the primary is held on the second Tuesday in September preceding the general election, Mason St. 1940 Supp. § 601-3(1), and the general election to fill such offices held on the first Tuesday after the first Monday in November. Mason St. 1940 Supp. § 601-1(1)b; *Id.* 1941 Supp. § 601-11(2)g. See L. 1939, c. 185, fixing the terms of village officers. In the village of Hibbing candidates may file at least two weeks before the election. Mason St. 1940 Supp. § 601-11(2)c.

It is plain that the provisions of the corrupt practices act requiring the filing of such statements of expenditures, which were designed to apply to primary and general elections for state and county offices, cannot apply to village elections. A candidate for village office is permitted to file late in November, long after the general state and county elections and the dates on which the corrupt practices act requires the statements to be filed. It is simply physically impossible for a candidate who makes expenditures late in November and early in December to file statements thereof at prior times in August, September, October, and November. The corrupt practices act does not apply to a given election where its whole tenor shows, as it does here, that it is inapplicable. Mathison v. Meyer, 159 Minn. 438, 199 N. W. 173 (holding the corrupt practices act inapplicable to school elections). Since it cannot apply, we hold that the act does not apply. A candidate for office at an election in the village of Hibbing is not required to file verified statements of his expenditures.[3]

[3]The attorney general adopted this view in opinion No. 76, Report of Attorney General, 1940.

Contestee relies on Mason St. 1927, § 556, to sustain a contrary conclusion. Section 556 provides that such statement shall be filed on the second Saturday after the candidate or committee has first made a disbursement or incurred an obligation for political purposes, and thereafter on the second Saturday of each calendar month and also on the Saturday preceding any primary or general election. Conceivably this section could be applied to village elections.

Section 556 was repealed as a part of Mason St. 1927, c. 6, by *Id.* 1940 Supp. § 601-12. The repealing statute declares that its provisions shall be deemed continuations of those by it repealed only so far as they are the same. *Id.* § 601-12a. See Johnson v. DuBois, 208 Minn. 557, 294 N. W. 839. The repealing statute is not the same as the old one. *Id.* 1940 Supp. § 601-10(1)j, *supra*, requires a candidate's statements of expenditures to be filed not on certain days preceding any primary or general election, but on certain days in August, September, October, and November. The changes wrought by § 601-10(1)j with respect to filing such statements are so radical as to leave no room for the application of § 556. The new statute was intended to prescribe the only rules governing the subject matter of the legislation and entirely supersedes and repeals the prior one. Northwestern Fuel Co. v. Live Stock State Bank, 182 Minn. 276, 234 N. W. 304; 6 Dunnell, Dig. & Supp. § 8927. The provisions of § 556 so far as they relate to the time of filing of statements of expenditures were entirely repealed.

Since the provisions of the corrupt practices act relating to the filing of statements of expenditures by candidates do not apply to elections in the village of Hibbing, it was error to hold that contestant was not entitled to possession of the office of recorder because of his failure to file such a statement.

The order is affirmed on contestee's appeal, and the judgment is reversed on contestants' appeal with directions to order judgment that contestant Aura is entitled to the office of recorder of Hibbing.

Affirmed on contestee's appeal.

Reversed with directions in accordance with the opinion on contestants' appeal.

UPON APPLICATION FOR REARGUMENT.

On December 19, 1941, the following opinion was filed:

PER CURIAM.

Contestee calls our attention for the first time to the fact that the village of Hibbing, pursuant to L. 1933, c. 327 (Mason St. 1934 Supp. §§ 317-1 to 317-6), as amended by L. 1939, c. 271, adopted the primary election system for nomination of candidates for village offices under which the primary election is required to be held not less than 10 nor more than 14 days before the village general election, and under which candidates may file at least 20 days before the primary election. He contends that thereby the provisions of the corrupt practices act which require candidates to file verified itemized statements of their expenditures were made applicable to candidates for office in the village of Hibbing.

While the primary plan shows that candidates for office in the village of Hibbing may file at a somewhat earlier time than that stated in the opinion, that fact does not alter the result reached, that the provisions of the corrupt practices act relating to the filing of statements of expenditures do not apply to such candidates.

The motion for reargument is denied.